2. *Count II: Claim For Negligent Maintenance of Employment Records.*

Plaintiff relies on *Quinones v. United States,* 492 F.2d 1269 (3d Cir.), to support his argument that his action for negligent maintenance of employment records is not excepted by section 2680(h). *Quinones* involved an F.T.C.A. action by a former Government employee based on the alleged failure of the Government to use due care in maintaining his personnel records, resulting in damage to his reputation. *Quinones* did not involve the interference with contract exception. Specifically, the *Quinones* court held that the libel and slander exception in section 2680(h) barred plaintiff's claim based on breach of a duty to disseminate accurate information, but did not bar his claim for breach of an alleged duty to maintain complete and accurate records of plaintiff's employment history. 492 F.2d at 1280–81. In *Quinones,* as in the case at bar, plaintiff alleged that he was denied subsequent employment due to the Government's transmittal of inaccurate information.

■ In the case at bar, Count II of plaintiff's complaint can be read as stating a claim for negligent maintenance of his employment records. This claim is distinct from, and based on different conduct than, the interference with prospective advantage claim. Therefore, since the claim in Count II does not fall within any of the torts enumerated in section 2680(h) and plaintiff can recover if he establishes the allegations in Count II, Count II is not dismissed.

Because Count II states a claim upon which relief can be granted, this Court must address defendant's argument that the claim is barred by the statute of limitations.

Under section 2401(b) of the F.T.C.A., a claim must be brought within two (2) years of the date upon which it accrued. 28 U.S.C. § 2401(b). In *United States v. Kubrick,* 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979), the court held that a claim does not "accrue" for purposes of section 2401(b) until "plaintiff has discovered *both* his injury and its cause." *Id.* at 120, 100 S.Ct. at 358 (emphasis added).

■ In the present case, plaintiff alleges that while he was injured in 1966 he did not discover its cause until 1981. Taking these allegations as true, as this Court is required to do in a motion to dismiss, plaintiff's claim is not barred by the statute of limitations.

Accordingly, defendant's motion to dismiss Count II of plaintiff's complaint be and is denied.

Branko **OBRADOVICH,** Plaintiff,

v.

**FEDERAL RESERVE BANK OF NEW YORK,** Defendant.

Branko **OBRADOVICH,** Plaintiff,

v.

**FEDERAL RESERVE BANK OF NEW YORK, Karl Jaus and Fred Eckhoff,** Defendants.

**Nos. 82 Civ. 2167, 82 Civ. 4409.**

United States District Court, S.D. New York.

Aug. 30, 1983.

In July 1981, prior to his termination, plaintiff filed a national origin discrimination complaint with the Equal Employment Opportunity Commission ("EEOC")[1] against the Federal Reserve, Karl Jaus, his immediate supervisor and the foreman of the Maintenance Department, and Fred Eckhoff, the assistant chief of the Maintenance Department. The complaint charged that he was harassed and subjected to different and adverse conditions of employment because he was of Yugoslavian origin. The EEOC notified the defendants of the complaint in October 1981. On January 19, 1982 plaintiff engaged in an altercation with another employee in which each sustained injuries and required medical attention. Several days later, plaintiff was discharged, as was the other employee.

In April 1982 plaintiff instituted his first action, naming the Federal Reserve as the sole defendant. His complaint alleged that his discharge deprived him of federal constitutional rights, and he sought reinstatement, lost wages, compensatory and punitive damages.

On July 7, 1982, plaintiff commenced his second action, naming Jaus and Eckhoff, in addition to the Federal Reserve, as defendants, and alleging that his dismissal was an act of national origin discrimination in violation of section 706 of the Civil Rights Act of 1964 ("Title VII").[2] The actions were consolidated in August 1982. Subsequently, attorneys appeared on behalf of plaintiff and filed a single, amended consolidated complaint in both actions.

The defendants now move to dismiss the amended complaint pursuant to Fed.R. Civ.P. 12(b)(6) for failure to state a claim upon which relief may be granted. Since they submit documents outside of the pleadings in support of the motion and have filed the statement required by Local Rule 3(g), defendants seek judgment pursuant to Rule 56 as authorized by Rule 12(c).

Fried, Frank, Harris, Shriver & Jacobson, New York City, for plaintiff; Carol Miller, New York City, of counsel.

James H. Oltman, Gen. Counsel, Federal Reserve Bank of New York, New York City, for defendants; Don N. Ringsmuth, Marysue Sullivan, New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Plaintiff, a former maintenance employee of the Federal Reserve Bank of New York ("Federal Reserve"), appearing *pro se*, commenced two separate actions in this Court. Both center on events prior to and including his discharge after eight years' employment as a painter.

---

1. Plaintiff filed the complaint with the New York City Commission on Human Rights, which accepted it on behalf of the EEOC.

2. 42 U.S.C. § 2000e (1981). Before bringing the second action, plaintiff obtained a right to sue letter from the EEOC, based on his 1981 complaint to that agency.

## THE TITLE VII CLAIMS

 The first claim alleges that, during the course of plaintiff's employment, defendants committed various acts of discrimination against plaintiff based on his religion (Jewish) and national origin (Yugoslavian), in violation of Title VII, with the intent to cause him to leave the employ of the Federal Reserve and/or waive rights guaranteed to him under the Act, and that such discriminatory acts culminated in his dismissal.

The defendants seek dismissal of this claim upon the ground that Obradovich has failed to allege specific facts to establish intentional discrimination—in essence, that he has alleged that he was discharged because of his national origin and religion only in a conclusory fashion, which defendants urge has been held insufficient in this Circuit.[3] The complaint, fairly read, alleges that the defendants engaged in a course of conduct while plaintiff was in their employ that had the effect of harassing him; that such conduct included assigning plaintiff to menial and demeaning tasks not required of similarly situated employees, and subjecting him to ethnic, racial and religious slurs; that the conduct culminated in their dismissal of him; and that the harassment and dismissal were based upon plaintiff's reli-

gion and national origin. Those allegations are sufficient to meet the requirement of a "short and plain statement of the claim showing that the pleader is entitled to relief" under Fed.R.Civ.P. 8(a)(2). The Rule does not require a claimant to set forth in detail the facts upon which he bases his claim.[4] Instead, the Federal Rules of Civil Procedure intend that such facts will be ascertained through discovery.[5]

 Under his second claim Obradovich charges that the harassment and dismissal of him were acts of retaliation because of his complaints to the EEOC concerning the prejudice of his supervisor and the discrimination against him. Here, too, the allegations are sufficient to meet the requirements of Rule 8(a)(2).

 Defendants next argue that the complaint fails to allege that Jaus and Eckhoff are "employers" under Title VII or that they took part in Obradovich's dismissal, and that it therefore should be dismissed as to them. Title VII defines an employer as "a person engaged in an industry affecting commerce . . . and any agent of such person."[6] The statute does not define "agent"; however, courts have interpreted the term to include supervisory employees

---

3. *Martin v. New York State Dep't of Mental Hygiene*, 588 F.2d 371, 372 (2d Cir.1978); *Birnbaum v. Trussell*, 347 F.2d 86 (2d Cir.1965); *Powell v. Workers Compensation Board of the State of New York*, 327 F.2d 131 (2d Cir.1964); *Morpurgo v. Board of Higher Education in the City of New York*, 423 F.Supp. 704, 714 (S.D.N.Y.1974).

4. *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Defendants' reliance on *Birnbaum v. Trussell, supra* note 3, *Morpurgo v. Board of Higher Education in the City of New York, supra* note 3, and *Martin v. New York State Department of Mental Hygiene, supra* note 3, is misplaced. *Birnbaum* requires that a complaint alleging a conspiracy to violate the claimant's civil rights set forth specific facts showing intentional denial of civil rights. No conspiracy is alleged in the case at bar. *Birnbaum* is a narrow exception to the general rule of *Conley;* the rule not the exception, is applicable here. *Cf. Angola v. Civiletti,* 666 F.2d 1 (2d Cir.1981).

 *Morpurgo* dismissed a Title VII claim not because the claim failed to meet the *Birnbaum*

requirement, but because the complaint failed to specify how the defendant's actions were discriminatory, or even to specify the plaintiff's race, sex, religion, or national origin. *Morpurgo, supra,* at 711. Similarly, *Martin* involved a complaint that stated only that the plaintiff had been denied the authority, salary, and privileges commensurate with his position because of his race. *Martin, supra,* at 372. Unlike *Morpurgo* and *Martin*, Obradovich provides specific instances of treatment different from other employees. *See Malarkey v. Texaco, Inc.,* 704 F.2d 674 (2d Cir.1983). *See also Ferguson v. Mobil Oil,* 443 F.Supp. 1334 (S.D.N.Y.1978), *aff'd,* 607 F.2d 995 (2d Cir.1979); *Washington v. City of Evanston,* 535 F.Supp. 638 (N.D.Ill. 1982).

5. *Conley, supra* note 4.

6. 42 U.S.C. § 2000e(b) (1981). The Federal Reserve has not pressed any contention that it is an executive agency rather than a private employer under Title VII.

and employees who "participated in the decision making process that forms the basis of the alleged discrimination."[7] Obradovich alleges that the defendant Jaus is his immediate supervisor, and defendant Eckhoff is the Assistant Chief of his department, and that Jaus harassed him, and Eckhoff ignored his complaints of harassment and discrimination and allowed such conduct to continue. Those allegations adequately state a claim against Jaus and Eckhoff for the alleged harassment based on discriminatory conduct. The complaint fails, however, to allege that defendants Jaus and Eckhoff participated in the decision to fire Obradovich.[8] Accordingly, the claims based upon the discharge are dismissed as to Eckhoff and Jaus, with leave to replead them.

The defendants next move to dismiss plaintiff's Title VII religious discrimination charge because he did not include such a charge in his complaint to the EEOC; rather, he alleged only a claim of national origin discrimination. However, the claims in a subsequent Title VII action are not limited to the specific EEOC charge, but take "into account the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."[9] The defendants argue that it could not "reasonably be expected" that a religious discrimination charge would grow out of plaintiff's national origin charge. The facts here suggest otherwise. It does not appear that the EEOC investigated Obradovich's charges. Had it done so the likelihood is that the investigation readily would have unearthed plaintiff's claim of religious discrimination.[10] Obradovich alleged in his EEOC complaint[11] that Jaus, a German, harassed him with frequent references to the "war between the Yugoslavians and Germans"—World War II. Given the circumstances of that war and the nature of the charge filed with the EEOC, a competent investigator would, as a matter of course, probe generally into the conditions of employment to ascertain the merits of the complaint, and such an inquiry would readily have brought to the surface that Obradovich's claim of discrimination also encompassed religious discrimination. Title VII claimants, who in most instances prepare the complaint filed with the EEOC without benefit of counsel, "should not be held to the precision of a code pleader,"[12] lest the federal policy of redressing discrimination, of whatever nature, be defeated.

Further, when deposed by defendants, plaintiff stated that the Federal Reserve discriminated against him because he had complained to the chief of the maintenance department that defendant Jaus said he hated Blacks and Jews, and that Jaus called plaintiff derogatory names related to his religion. Thus, the defendants can hardly claim to be surprised by the religious discrimination charge, and they make no claim that the purpose of the charge filing requirement—resolution of grievances through conciliation and voluntary compliance rather than litigation[13]—will be un-

7. See, e.g., Bradley v. Rockland County Community Mental Health Center, 24 EPD ¶ 31,321 (S.D.N.Y.1980); Robson v. Eva's Super Market, 538 F.Supp. 857, 863 (N.D.Ohio 1982); Jones v. Metropolitan Denver Sewage Disposal District, 537 F.Supp. 966, 970 (D.Colo.1982); Compston v. Borden, 424 F.Supp. 157 (S.D.Ohio 1976).

8. Bradley v. Rockland County Community Mental Health Center, supra note 7; Jones v. Metropolitan Denver Sewage Disposal District, supra note 7.

9. Silver v. Mohasco Corp., 602 F.2d 1083, 1090 (2d Cir.1979), rev'd on other grounds, 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980) quoting Smith v. American President Lines, Ltd., 571 F.2d 102, 107 n. 10 (2d Cir.1978).

10. See Hicks v. ABT Associates, Inc., 572 F.2d 960, 967 (3d Cir.1978); Kahn v. Pepsi Cola Bottling Group, 526 F.Supp. 1268, 1270 (E.D.N.Y.1981).

11. That Obradovich failed to specify religion as a basis for the discrimination is hardly surprising—the EEOC form he completed did not even have a check-off for "religion."

12. Silver v. Mohasco Corp., supra note 9, at 1090.

13. See Kahn v. Pepsi Cola Bottling Group, supra note 10.

dermined if plaintiff is allowed to press his claim of religious discrimination.

Accordingly, the defendants' motion to dismiss the Title VII claims is denied except that the claims against Jaus and Eckhoff, wherein plaintiff failed to allege that those defendants participated in his discharge, are dismissed, with leave to plaintiff to replead.

## THE CONTRACT CLAIM

Plaintiff's third claim alleges that his dismissal violated applicable employment and personnel rules of the Federal Reserve. Plaintiff does not specify these rules or clearly articulate his theory. However, the defendants assume that plaintiff is relying upon the Federal Reserve's "employment and personnel rules" to constitute an implied contract between him and the Federal Reserve barring his discharge except for cause. Based upon that assumption the Federal Reserve argues that such a claim must yield to the statutory provision in the Federal Reserve Act which provides that a Federal Reserve Bank is empowered to appoint various officers and employees and "to dismiss at pleasure" such officers and employees.[14]

Two federal courts have held that the "dismiss at pleasure" clause renders void and unenforceable any employment contract which contains provisions contrary thereto.[15] Plaintiff seeks to distinguish these cases upon a contention that the provision was never intended to apply to lower level employees such as maintenance workers, but was intended to facilitate the removal of employees in key executive, policy, financial and management roles.

■ The plaintiff's arguments have surface appeal. The power to fire a painter in the maintenance department does not seem essential to the Federal Reserve's discharge of its financial responsibilities. However, the legislative history of the statute indicates that, for whatever reason, Congress did intend the provision to apply to all employees. The version of the statute originally passed by the Senate stated only that the Federal Reserve Bank would have the power "to appoint by its board of directors . . . such officers as are not otherwise provided for in this Act . . . to dismiss such officers or any of them as may be appointed by them at pleasure, and to appoint others to fill their places."[16] The House and Senate Conference Committee revised the language to: "to appoint . . . such officers and employees . . . and to dismiss at pleasure such officers or employees."[17] Thus, the inclusion of employees other than officers in the provision was deliberate. The Court holds, therefore, that the "dismiss at pleasure" provision of the Federal Reserve's corporate powers statute restricts the Federal Reserve's power to contract with *all* employees. Any implied contract based upon the Federal Reserve's personnel rules would exceed the Federal Reserve's authority, and be unenforceable. Obradovich's contract claim is dismissed.

**14.** 12 U.S.C. § 341 (1945) provides in pertinent part that the Bank shall have authority to appoint by its board of directors a president, vice presidents, and such officers and employees as are not otherwise provided for in this Chapter, to define their duties, require bonds for them and fix the penalty thereof, and *to dismiss at pleasure such officers or employees.* (emphasis supplied).

**15.** *Bollow v. Federal Reserve Bank of San Francisco,* 650 F.2d 1093 (9th Cir.1981) cert. denied, 455 U.S. 948, 102 S.Ct. 1449, 71 L.Ed.2d 662 (1982); *Armano v. Federal Reserve Bank of Boston,* 468 F.Supp. 674 (D.Mass.1979).

**16.** H.R.Rep. No. 163, 63rd Cong., 2d Sess. 43 (1913).

**17.** *Id.* Further, in the debate of the House of Representatives over the conference committee's draft, Representative Willis spoke against the bill because he believed the conference version gave the Federal Reserve banks authority to "appoint employees without any regard whatever to civil service requirements . . . [and] to dismiss at pleasure any of their employees." 51 Cong.Rec. 1462 (1913). While the remarks of one legislator are not dispositive regarding the intent of Congress, Mr. Willis' remarks do indicate that Congress deliberately chose to use the broad term "employees" in the dismiss at pleasure provision rather than limit its application to officers or high level professionals or executives.

## THE DUE PROCESS CLAIM

Plaintiff asserts a separate and fourth claim for relief upon allegations that his dismissal was in violation of his right to due process guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution because he was not given notice or an opportunity to be heard. In the light of the statutory provision empowering Federal Reserve to "discharge at pleasure" that led to the dismissal of his third claim, plaintiff cannot charge that he was deprived of a "legitimate claim of entitlement" to continued employment.[18] So, too, there is no basis upon which to urge a deprivation of a liberty interest without due process. Plaintiff does not allege that Federal Reserve disseminated false and derogatory information to the public in connection with his termination as an employee.[19] The motion to dismiss the denial of plaintiff's due process claim is granted.

## THE WORKERS' COMPENSATION CLAIM

Plaintiff's fifth and final claim alleges that his dismissal, after he had filed a claim for compensation under the New York State Workers' Compensation Law, was because he had filed that claim, and therefore was a retaliatory act prohibited by the New York statute.[20] Obradovich raised the very same claim at a hearing before a Workmen's Compensation Law Judge ("WCLJ"). After a full hearing the WCLJ rendered a decision dismissing plaintiff's complaint upon a finding that his "employment was terminated for non-discriminatory business related reasons ... [that he] failed to show ... were pretextual."

Defendants urge that plaintiff's compensation claim here is barred by reason of the *res judicata* effect of the WCLJ's decision. The issue of whether his discharge was because he had filed his compensation claim was clearly within the WCLJ's jurisdiction under the New York statute. Thus, her determination is binding upon the plaintiff as employee and upon the Federal Reserve Bank as employer and as participants in that proceeding, under New York law and under "settled principles of *res judicata* which apply to administrative hearings and determinations when the agency involved is acting, as does the compensation board, in a quasi-judicial capacity."[21]

The same issue may not be litigated again in this Court, and the defendants' motion to dismiss is granted. However, the preclusive effect of the WCLJ's decision is not as broad as defendants urge. Plaintiff is precluded from litigating in this action only those issues that are identical to those decided by the WCLJ. Under New York statute this was limited to *vel non* the plaintiff's discharge by the Federal Reserve was because he had filed his compensation claim. That issue is separate and distinct from that raised under his claims that his discharge was because of his national origin or religion and also in retaliation for his having filed the charge before the EEOC.

Submit order in accordance with the foregoing.

**18.** *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); *Goetz v. Windsor Central School District,* 698 F.2d 606 (2d Cir.1983); *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 447 (2d Cir.1980).

**19.** *Codd v. Velger,* 429 U.S. 624, 627, 97 S.Ct. 882, 883, 51 L.Ed.2d 92 (1977); *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Quinn v. Syracuse Model Neighborhood Corp., supra* note 18, at 446, 447.

**20.** N.Y.Work.Comp. Law, § 120 (McKinney 1982).

**21.** *Werner v. State of New York,* 53 N.Y.2d 346, 353, 441 N.Y.S.2d 654, 657, 424 N.E.2d 541, 544 (N.Y.1982). *See also O'Conner v. Midiria,* 55 N.Y.2d 538, 450 N.Y.S.2d 455, 435 N.E.2d 1070 (N.Y.1982).