847 F.2d 144
 27 ERC 2222, 57 USLW 2027, 18 Envtl.
L. Rep. 21,084
 UNITED STATES of America, Plaintiff,
v.
DART INDUSTRIES, INC., General Electric Company, Kerr Glass
Manufacturing Corp., Defendant & Third Party
Plaintiffs-Appellants.
TECHNOGRAPHICS PRINTWORLD, INC., Defendant & Third Party Plaintiff,
v.
SOUTH CAROLINA DEPARTMENT OF HEALTH & ENVIRONMENTAL CONTROL,
Third Party Defendant-Appellee.
 No. 87-3130.
 United States Court of Appeals,
Fourth Circuit.
 Argued March 9, 1988.
Decided May 27, 1988.
 
 Gary J. Toman (Charles H. Tisdale, Jr., King & Spaulding, Atlanta, Ga., Julius W. McKay, Haynsworth, Marion, McKay & Guerard, Columbia, S.C., on brief), for defendant & third party plaintiffs-appellants.
 Jacquelyn S. Dickman, Asst. Gen. Counsel (Walton J. McLeod, III, Gen. Counsel, South Carolina Dept. of Health & Environmental Control, Columbia, S.C., on brief), for third party defendant-appellee.
 Before HALL and ERVIN, Circuit Judges, and BRITT, Chief Judge, United States District Court for the Eastern District of North Carolina, sitting by designation.
 ERVIN, Circuit Judge:
 
 
 1
 Defendants and third party plaintiffs Dart Industries, Inc. (Dart), General Electric Company (GE) and Kerr Glass Manufacturing Corporation (Kerr), appeal the dismissal by the district court of their third party complaint against the South Carolina Department of Health and Environmental Control (DHEC). We agree with the finding by the lower court that DHEC is not and never has been an owner or operator of the site in question under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), 42 U.S.C. Sec. 9602 et seq. Consequently, we affirm the dismissal of the third party complaint.I.
 
 
 2
 Fort Lawn is an abandoned waste site in South Carolina. From 1970 until 1973, the site was used by Southeastern Pollution Control (SEPCO) to store and dispose of hazardous chemicals. In 1972, South Carolina issued an administrative order citing SEPCO for the hazardous waste levels at the site. SEPCO declared bankruptcy in 1973 and left the site. In 1974, DHEC entered into an arrangement with Columbia Organic Chemical Company (COCC), permitting COCC to store and dispose of waste at the site if COCC would begin a cleanup of the SEPCO materials still on the premises. COCC formed a subsidiary, South Carolina Recycling and Disposal, Inc. (SCRDI), to operate the facility. DHEC granted permission to SCRDI for disposal of wastes at Fort Lawn, and DHEC promised to install monitoring wells on the site. The wells were never built.
 
 
 3
 On December 20, 1977, SCRDI sold the Fort Lawn site to Carolawn Company, Inc., who planned to build a waste incinerator at the facility. Soon thereafter, Carolawn notified DHEC that it intended to store wastes on the premises until the incinerator was constructed. DHEC issued various permits for waste disposal at the site, and required generators to comply with a waste tracking manifest system when they shipped to Fort Lawn.
 
 
 4
 In 1980, Carolawn ceased operations at Fort Lawn. The federal government moved onto the site and completed a surface cleanup in 1982.
 
 
 5
 The United States brought the underlying action pursuant to CERCLA, 42 U.S.C. Sec. 9607, against twenty defendants who allegedly generated certain hazardous waste materials found at the Fort Lawn, South Carolina, site. Dart, GE and Kerr are three of those twenty defendants. These three generators filed the instant third party complaint alleging that DHEC is also a responsible party under CERCLA because of its alleged active participation in the Fort Lawn operation.
 
 
 6
 Before the district court, DHEC denied liability under CERCLA and asserted the state of South Carolina's sovereign immunity under the Eleventh Amendment. The generators' motion to strike the Eleventh Amendment defense was denied. The district court granted DHEC's motion to dismiss the third party complaint based on its finding that DHEC was not an owner or operator under CERCLA. We agree with the lower court's subsequent finding that DHEC is not liable under CERCLA. Accordingly, we do not address the issue of sovereign immunity under the Eleventh Amendment.
 
 II.
 
 7
 Dart, GE and Kerr (the generators) allege that DHEC is liable under CERCLA as an owner or operator of a hazardous waste facility pursuant to 42 U.S.C. Sec. 9607(a),[1] as defined in 42 U.S.C. Sec. 9601(20)(A)(iii)[2] and (D).[3]
 
 
 8
 First, under Sec. 9601(20)(A), an owner or operator includes the entity that "controlled activities at such facility" before a declaration of bankruptcy. 42 U.S.C. Sec. 9601(20)(A)(iii). The generators argue that DHEC controlled the activities at Fort Lawn before Carolawn abandoned the site in 1980. During this time, DHEC loosely regulated the activity at the site pursuant to the South Carolina Pollution Control Act, S.C.Code Ann. Secs. 48-1-10 to 350 (1987), and the newer South Carolina Hazardous Waste Management Act, S.C.Code Ann. Secs. 44-56-10 to 510 (1985 and Supp.1986). DHEC approved or disapproved applications to store wastes at Fort Lawn, inspected the site, and required proper transportation of the wastes delivered to Fort Lawn. However, there is no allegation that DHEC went beyond this governmental supervision and directly managed Carolawn's employees or finances at the Fort Lawn site. Thus, this court finds that DHEC is not an owner or operator under Sec. 9601(20)(A)(iii).
 
 
 9
 The generators also assert that DHEC is implicated because it does not fall within the express liability exception for governmental units that acquire ownership through bankruptcy or abandonment. Section 9601(20)(D) affords such immunity unless the governmental unit "caused or contributed to the release or threatened release of a hazardous substance...." Dart, GE and Kerr argue that after SEPCO declared bankruptcy in 1973 and after Carolawn abandoned the Fort Lawn site in 1980, DHEC caused or contributed to waste release. Following SEPCO's bankruptcy, DHEC approved the transportation of COCC's wastes to the site. DHEC failed to force a cleanup. After Carolawn abandoned the property, the generators claim DHEC refused to allow various groups, including the appellants, to remove their wastes.
 
 
 10
 As with the claim under Sec. 9601(20)(A), these allegations that DHEC did not properly monitor the site or facilitate the cleanup fail to characterize DHEC as an owner or operator. The generators are unable to specify any "hands on" activities by DHEC that contributed to the release of hazardous wastes. The district court appropriately described DHEC's activities as merely "a series of regulatory actions." Appendix at 142.
 
 
 11
 This court does not dispute that DHEC may have inadequately enforced the state environmental regulations. However, such unfortunate deficiencies do not constitute ownership or control as defined in Sec. 9601; thus DHEC is not liable as an owner or operator under Sec. 9607. Based on this determination, we find it unnecessary to address the issue of sovereign immunity. The district court's dismissal of the third party complaint is
 
 
 12
 AFFIRMED.
 
 
 
 [1]
 Sec. 9607. Liability
 (a) Covered persons; scope; recoverable costs and damages; interest rate; "comparable maturity" date
 Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section--
 (1) the owner and operator of a vessel or a facility,
 (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,
 (3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and
 (4) any person who accepts or accepted hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for--
 (A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan.
 
 
 [2]
 42 U.S.C. Sec. 9601(20)(A) provides in part:
 (A) The term "owner or operator" means ...
 (iii) in the case of any facility, title or control of which was conveyed due to bankruptcy, foreclosure, tax delinquency, abandonment, or similar means to a unit of State or local government, any person who owned, operated or otherwise controlled activities at such facility immediately beforehand. Such term does not include a person, who, without participating in the management of a vessel or facility, holds indicia of ownership primarily to protect his security interest in the vessel or facility.
 
 
 [3]
 42 U.S.C. Sec. 9601(20)(D) provides:
 The term "owner or operator" does not include a unit of State or local government which acquired ownership or control involuntarily through bankruptcy, tax delinquency, abandonment, or other circumstances in which the government involuntarily acquires title by virtue of its function as sovereign. The exclusion provided under this paragraph shall not apply to any State or local government which has caused or contributed to the release or threatened release of a hazardous substance from the facility, and such a State or local government shall be subject to the provisions of this chapter in the same manner and to the same extent, both procedurally and substantively, as any nongovernmental entity, including liability under section 9607 of this title.