Louis A. STILLOE, Plaintiff,

v.

ALMY BROTHERS, INC., Robert J. McMahon and Mary A. McMahon, New York State Department of Environmental Conservation, Defendants.

No. 90–CV–818.

United States District Court, N.D. New York.

March 19, 1991.

Butler Allen Clark & Place, Vestal, N.Y., for plaintiff; Earl D. Butler and David S. Berger, of counsel.

Kramer Wales & Wright, Binghamton, N.Y., for defendant Almy Bros.; Robert H. Wedlake, of counsel.

Alexander W. Luckanick, Binghamton, N.Y., for defendants Robert and Mary McMahon.

Robert Abrams, Atty. Gen., State of N.Y., Albany, N.Y., for state defendants; John J. Privitera, Asst. Atty. Gen., of counsel.

## MEMORANDUM–DECISION AND ORDER

McCURN, Chief Judge.

### BACKGROUND

Plaintiff Louis A. Stilloe ("Stilloe") alleges that in 1988 the New York State Department of Environmental Conservation ("DEC") determined that certain barrels containing hazardous substances were being stored without proper authorization at 810 Jackson St. in Broome County, Binghamton, New York ("the site"). These barrels were being stored in or near a parking lot/driveway next to the building wherein Stilloe conducted his business.

Prior to his purchasing the site, Stilloe alleges that defendant Robert J. McMahon ("McMahon") moved barrels and debris being stored at the site onto the property of defendant Almy Brothers, Inc. ("Almy"), whose land abuts the site and is accessed by a common driveway.

In 1989, the DEC designated the site as a Class 2 site under Art. 27, Title 13 of the New York Environmental Conservation Law. With this classification, the DEC determined that the site in question posed a significant threat to the environment which required immediate action.[1] Soon thereafter, the DEC took over management of the site and moved the barrels from their location on the Almy property to a location further back on the common driveway shared by Stilloe and Almy. During this

---

1. See N.Y.Env.Con.L. §§ 27–1301 et seq.

relocation, plaintiff alleges that one or more of the barrels broke, leaked and contaminated the common driveway. Stilloe claims that the DEC conducted a preliminary cleanup of the spilled waste and contaminated soil in which the hazardous substances were placed in new barrels and stored on the Stilloe and Almy properties.

On December 4, 1990, this court heard oral argument concerning motions brought by the DEC, Stilloe and Almy. The DEC had moved to dismiss plaintiff's original complaint and Almy's original cross-claim against the DEC, however this motion became moot after this court granted Stilloe and Almy's motions to file and serve an amended complaint and amended answer respectively in this action.

Plaintiff asserts three causes of action in his amended complaint. The first claim, alleged against all defendants, seeks response costs under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA" or "the Act"), 42 U.S.C. § 9601 et seq., as amended by the Superfund Amendments and Reauthorization Act of 1986 ("SARA"). The second cause of action, asserted only against defendant McMahon, is for breach of contract. Stilloe's third claim, asserted against all defendants, seeks a declaratory judgment from this court, pursuant to CERCLA § 113(g)(2) and § 107 (42 U.S.C. § 9613(g)(2)) and the Declaratory Judgment Act, 28 U.S.C. § 2201. The relief in this claim seeks a declaration from this court finding the defendants liable to Stilloe for all those response costs incurred by him in the future which are necessary and consistent with the national contingency plan developed to remediate the site at issue. In this amended complaint, Stilloe alleges that the DEC is a "person" under CERCLA, and that the DEC, acting as an "operator" of the site, was "grossly negligent" in its handling of the hazardous materials at the site.

In its amended answer, Almy has asserted a cross-claim against the DEC which seeks monetary damages for expenses Almy incurred as a result of removing the contaminated substances from the site. Additionally, Almy seeks a declaration from this court stating that the DEC's actions or inactions in remediating the problem at the site in question "multiplied" the cleanup costs incurred by Almy.

The DEC has moved to dismiss plaintiff's amended complaint and defendant Almy's amended cross-claim against the DEC pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In its motion, the DEC alleges that plaintiff's amended complaint fails to state a claim against the DEC. The movant contends that it is not a "person" under CERCLA and that it was not an "operator" of the site at the time the barrels allegedly broke open and spilled the hazardous waste. The DEC further argues that Almy's amended cross-claim against it similarly fails to state a claim against the DEC.

## DISCUSSION

(1) *Stilloe's claims against the DEC.*

Before addressing the merits of the DEC's motion, it is helpful to review the applicable statute governing liability under the Act. 42 U.S.C. § 9607(a) provides:

Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section—

(1) the owner and operator of a vessel or a facility,

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

(3) any person who by contract, agreement or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and

(4) any person who accepts or accepted any hazardous substances for trans-

port to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for—

(A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian Tribe not inconsistent with the national contingency plan;

(B) any other necessary costs of response incurred by any other person consistent with the national contingency plan;

(C) damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such release; and

(D) the costs of any health assessment or health effects study carried out under section 104(i) [42 USC § 9604(i)].

Thus, to be liable under CERCLA, you must (a) be a "person" who (b) falls within one of the four categories of liable persons described in § 9607(a).

(a) Is the DEC a "person" under the Act?

▮ Initially, the court must determine whether the DEC is a "person" under CERCLA. The DEC is an agency of the State of New York whose purpose is to coordinate and develop policies, planning and programming related to the environment of the State. *See generally* N.Y.Env. Con.L., Art. 3. The State of New York, and therefore its agencies, are "persons" as that term is defined by CERCLA. *See* 42 U.S.C. § 9601(21) (including "State" in the statute's definition of "person" under

the Act), *Pennsylvania v. Union Gas Co.*, 491 U.S. 1, 8, 109 S.Ct. 2273, 2278, 105 L.Ed.2d 1 (1989). Since the DEC is a person under the Act, this court must determine whether it may be liable to the plaintiff under any of categories of covered persons described in 42 U.S.C. § 9607(a).

(b) Is the DEC potentially liable to Stilloe under Section 9607(a) of CERCLA?

▮ Stilloe has not claimed that the DEC contracted or otherwise arranged for the disposal of the hazardous waste in his complaint, therefore the moving defendant cannot be liable to Stilloe under Section 9607(a)(3) of the Act.[2] Similarly, nowhere in his amended complaint does the plaintiff allege that the DEC accepted any of the hazardous substances "for transport to disposal or treatment facilities", as is required for liability to attach under Section 9607(a)(4). Therefore, the only manner in which the DEC could be liable to Stilloe in the present action would be if the DEC was either an "owner" or "operator" of the site at the time it allegedly broke open the barrels containing hazardous waste. *See* 42 U.S.C. § 9607(a)(1) and (2).

▮ A review of Stilloe's amended complaint reveals that there have been no allegations by the plaintiff that the DEC was an "owner" of the site in question, thus the DEC can only be liable to Stilloe if this court finds that this defendant was an "operator" of this site.

Plaintiff claims that:

The actions of [DEC] at the site subjects them to liability as an "operator" of the site, as plaintiff has alleged gross negligence on the part of [DEC] in connection with their activities at the site.[3]

---

**2.** Moreover, as the DEC correctly points out, an individual may only be liable under 42 U.S.C. § 9607(a)(3) when the plaintiff can demonstrate some type of nexus between the allegedly responsible person and the owner of the hazardous substances. When the only connection between the entity allegedly responsible for the damage and the hazardous waste itself is the fact that the party in question was attempting to remediate the hazardous waste problems at the

site, liability under this portion of the Act does not exist. *See State of New York v. City of Johnstown, N.Y.,* 701 F.Supp. 33, 36 (N.D.N.Y. 1988) and citations therein.

**3.** Plaintiff's memorandum of law in opposition to defendant's motion to dismiss plaintiff's complaint, 11/8/90, p. 5.

In responding to plaintiff's allegations, the DEC argues that:

[T]he claims made [by Stilloe] do not set forth any facts to support an argument that DEC's actions at the site rise to the level of an operator's.... The State's actions were simply taken in response to an illegal hazardous waste storage situation, which posed an emergency threat to the environment. There are no other classes of liable parties. Since the State is not alleged to be within any class, the claims for CERCLA response costs fail.[4]

In light of these differing views concerning whether the DEC's conduct rose to the level of an operator at the time it moved the barrels on the Stilloe/Almy property, this court first turns to the statutory definition of "operator" provided by CERCLA in an effort to ascertain the scope of this term.

42 U.S.C. § 9601(20) provides, in relevant part:

(A) The term "owner or operator" means (i) in the case of a vessel, any person owning or operating or chartering by demise, such vessel, (ii) in the case of an onshore facility or an offshore facility, any person owning or operating such facility, and (iii) in the case of any facility, title or control of which was conveyed due to bankruptcy, foreclosure, tax delinquency, abandonment, or similar means to a unit of State or local government, any person who owned, operated, or otherwise controlled activities at such facility immediately beforehand.

 * * * * * *

(D) The term "owner or operator" does not include a unit of State or local government which acquired ownership or control involuntarily through bankruptcy, tax delinquency, abandonment, or other circumstances in which the government involuntarily acquires title by virtue of its function as sovereign. The exclusion provided under this paragraph shall not apply to any State or local government which has caused or contrib-

uted to the release or threatened release of a hazardous substance from the facility, and such a State or local government shall be subject to the provisions of the Act in the same manner and to the same extent, both procedurally and substantively, as any nongovernmental entity, including liability under section 107 [42 USC § 9607].

Thus, the statute's definition of these terms gives courts little guidance in determining if a particular person or entity is liable as an operator; therefore an examination of previous court decisions which have interpreted this language of the Act is in order.

Courts which have grappled with this issue in the past have liberally interpreted the definitions of the terms "owner" and "operator". *See e.g. State of New York v. Shore Realty Corp.*, 759 F.2d 1032, 1052 (2d Cir.1985) (stockholder who manages corporation personally liable as an "operator"); *State of Idaho v. Bunker Hill Co.*, 635 F.Supp. 665, 671–72 (D.Idaho 1986) (parent corporation found to be an owner-operator under CERCLA); *United States v. South Carolina Recycling and Disposal Inc.*, 653 F.Supp. 984 (D.S.C.1986) (finding that a sublessor of a facility may be liable as an owner-operator). Thus, in resolving the present dispute, this court will likewise interpret this language liberally in order to ensure that the statutory intent of CERCLA is carried out.

There has been little case law concerning the issue of when a governmental agency is properly held liable under the Act. The plaintiff relies heavily on one such case, *Union Gas, supra*, in opposing the DEC's motion to dismiss.

The facts in *Union Gas* reveal that persistent flood problems had existed along the Brodhead Creek in Stroudsburg, Pennsylvania. The land along this creek included property which was owned by respondent Union Gas Company ("Union Gas"). For about 50 years, the predecessors of

---

**4.** DEC's second memorandum of law in support of its motion to dismiss, 11/19/90 (DEC Sec. Mem.), p. 8 (citations omitted).

Union Gas had operated a coal gasification plant at this site. A few years after the dismantling of this plant, which had occurred in 1955, the Borough of Stroudsburg, together with the Army Corps of Engineers, commenced major flood control efforts along the creek. These efforts included the digging of levees, erection of dikes, the narrowing and deepening of the creek, and redirection of the creek's flow. In 1980, shortly after acquiring easements to the property along the creek from the Borough, the State struck a large deposit of coal tar, a hazardous substance, while excavating the creek.[5] This tar began to seep into Brodhead Creek. Soon thereafter, the Environmental Protection Agency declared the site the Nation's first emergency Superfund site. The State of Pennsylvania, together with the Federal Government, cleaned up the area, and eventually the State was reimbursed by the Federal Government for cleanup costs totalling $720,000. In an effort to recoup these costs, the United States sued Union Gas, alleging that the company was liable for such costs because Union Gas and its predecessors had deposited the coal tar into the ground near the creek. Union Gas subsequently initiated a third party action against the State of Pennsylvania, claiming that the State was responsible for some portion of the cleanup costs since the State was allegedly an owner or operator of the site in question and its flood control efforts had negligently caused or contributed to the release of the hazardous coal tar into the creek. *Union Gas*, 491 U.S. at 5–6, 109 S.Ct. at 2276–77.

The Supreme Court, in finding that States may properly be held liable to private individuals under CERCLA, noted that:

The express inclusion of States within the statute's definition of "persons", and the plain statement that States are to be considered "owners or operators" in all but very narrow circumstances, together convey a message of unmistakable clarity: Congress intended that States be liable along with everyone else for cleanup costs recoverable under CERCLA.[6]

*Union Gas* at 8, 109 S.Ct. at 2278.

However, in *Union Gas* it was clear that the State of Pennsylvania was an "operator" of the site. There, the State itself created the emergency situation by striking the deposit of coal tar which then began seeping into the creek. It had acquired easements over the subject property and was in the midst of a major flood control project at the time of the spillage.

In the present case, the DEC was responding to an emergency situation created by either the plaintiff and/or the other defendants in this action. There were no easements obtained over the site; rather, the DEC's actions were taken in response to immediate threats to public health and the environment posed by the hazardous waste site. This court finds the conduct of the DEC in the present case to be less substantial than that of the State of Pennsylvania in *Union Gas;* thus that case is not dispositive of the issue of whether the DEC's actions in the present case rose to the level of an operator. Accordingly, a review of other court decisions concerning this issue is helpful.

In *United States v. New Castle County*, 727 F.Supp. 854 (D.Del.1989), the United States of America brought suit against several defendants, including New Castle County, Delaware ("the County"), the Stauffer Chemical Company ("Stauffer") and ICI Americas Inc. ("ICI") in an effort by the government to recover the cost and expenses it had incurred in responding to the alleged release and threatened release of hazardous substances from the Tybouts Corner landfill site in the County. Stauffer, ICI and the County filed third party complaints against the State of Delaware claiming that the State was liable to these defendants because of the actions it under-

---

**5.** Coal tar is a product of coal gasification.

**6.** The "narrow circumstances" referred to by the Court involves circumstances wherein the State acquires ownership or control of the site "involuntary through bankruptcy, tax delinquency, abandonment, or other circumstances in which the government involuntarily acquires title by virtue of its function as sovereign." 42 U.S.C. § 9601(20)(D).

took in its regulation of the disposal of waste at the site. Stauffer, ICI, the County and the State all moved for summary judgment on the issue of whether these regulatory activities of the State made it a responsible party under CERCLA.

In support of their motion, the defendants alleged that the State of Delaware's conduct in regulating the site demonstrated that the State had both operated the site and arranged for the disposal of hazardous substances at the landfill. However the State emphasized that its only activities regarding the site concerned the State's implementation and enforcement of various regulations promulgated under the then newly enacted Solid Waste Disposal Code of the State of Delaware. The State's regulatory activities relating to the Tybouts Corner landfill required users of the site to submit periodic reports to the State detailing the landfill's condition. Additionally, the State monitored the site on a continuing basis to ensure that the parties working at the landfill were adhering to statutory and regulatory guidelines regarding the proper disposal of waste at the hazardous waste site.

In finding that the State was not liable under the Act, the *New Castle County* court concluded that the State's enforcement of regulatory programs regarding the proper operation of hazardous waste sites could not be a basis for holding the State liable as an operator. The court noted that the actions taken by the State did "not exceed 'mere regulation', nor d[id] they constitute 'active, voluntary, "hands on" participation in the day-to-day management and operations' of the Site." *Id.* at 870.

In *United States v. Dart Industries, Inc., et al.*, 847 F.2d 144 (4th Cir.1988), numerous parties, including Dart Industries, Inc. ("Dart"), General Electric Company ("GE"), and Kerr Glass Manufacturing Corporation ("Kerr") were sued by the United States for allegedly generating hazardous waste at a certain site located in Fort Lawn, South Carolina. Dart, GE and Kerr ("the generators") filed a third party complaint against the South Carolina Department of Health and Environmental Control ("DHEC"), alleging that the DHEC was a responsible party under the Act because of its alleged active participation in the Fort Lawn operation. *Id.* at 145. The generators claimed that the DHEC was an owner or operator of the Fort Lawn site due to its regulatory activities concerning the subject property; activities which included the issuance of permits for waste disposal at the site, enforcement of regulatory schemes which required generators of hazardous waste to comply with a waste tracking manifest system when shipping waste to Fort Lawn and periodic inspections of the Fort Lawn property. *Id.* at 145–46. The DHEC moved to dismiss the generators' third party complaint against it, alleging, *inter alia*, that it was neither an owner nor an operator of the site in question, and that therefore it could not be held liable under CERCLA.

In affirming the district court's granting of the DHEC's motion to dismiss, the fourth circuit noted that during the relevant time period, the DHEC "loosely regulated the activity at the site" pursuant to South Carolina law. *Id.* at 146. The court noted that "there [was] no allegation that DHEC went beyond this governmental supervision and directly managed Carolawn's employees or finances at the Fort Lawn site." *Id.* The court concluded that, as a result of its limited involvement at the site, the DHEC was not an owner or operator of the Fort Lawn site. *Id.*

In *CPC International, Inc. v. Aerojet–General Corp., et al.*, 731 F.Supp. 783 (W.D.Mich.1989), Chief Judge Hillan was confronted with a motion to dismiss CERCLA claims alleged against the movant, the Michigan Department of Natural Resources ("MDNR"). In that case, the MDNR had entered into an agreement with Cordova Chemical Company ("Cordova"), the new owner of a hazardous waste site in Muskegon County, Michigan, whereby Cordova agreed to pay MDNR $600,000.00 and remove certain hazardous waste from the site in return for MDNR's promise not to hold Cordova responsible for any remedial actions deemed necessary as a result of contamination of the site which occurred prior to Cordova's purchase of the site.

Additionally, under this agreement MDNR purportedly assumed the responsibility of operating groundwater purge wells which would help reduce pollution and improve waste disposal at the hazardous waste site. Despite this alleged agreement, MDNR never operated these purge wells, resulting in, according to the plaintiff, a drastic increase in the contamination of local groundwater around the site. *Id.* at 786. CPC International Inc. sued MDNR to recover response costs in excess of $4,500,000.00 which it claimed were incurred as a result of the MDNR's nonfeasance and/or malfeasance. Other defendants in the action asserted cross-claims against MDNR claiming that they were entitled to recover some or all of their response costs related to the site from the MDNR. MDNR thereafter moved to dismiss plaintiff's complaint pursuant to Fed.R.Civ.Proc. 12(b)(6).

In denying MDNR's motion, the district court noted that "[t]he most commonly adopted yardstick for determining whether a party is an owner-operator under CERCLA is the degree of control that party is able to exert over the activity causing the pollution." *Id.* at 788. The court, in distinguishing the facts in its case from those found in *Dart, supra,* noted that the MDNR's agreement with Cordova concerning the disposal of the hazardous waste and the purging of the groundwater purge wells was:

> [S]ubstantially different from DHEC issuing permits, setting compliance standards, and promising to install monitoring wells in *Dart.* Such regulatory activity will ordinarily not designate one as an owner-operator, but *where a party assumes control of an activity and then fails to perform, that party should bear the responsibility for any pollution which results.*

*Id.* (emphasis added).

In both *New Castle County* and *Dart,* the involvement of the State of Delaware and the DHEC respectively regarding the subject hazardous waste sites was limited to the State's (or its agency's) regulation of activities at hazardous waste sites within their State. In both of these cases, the State's actions were merely regulatory in nature—the States had been involved in granting permits to individuals who used the site, inspecting the site for improper handling of hazardous waste materials and enforcing various regulations concerning the proper operation of the site. *See New Castle County, supra,* 727 F.Supp. at 870; *Dart, supra,* 847 F.2d at 145–46. Neither the State of Delaware nor the DHEC had had any "hands on" management or direct, physical participation regarding the removal of the hazardous waste at the site at issue.

In contrast to the mere regulatory activities of the defendants in *New Castle County* and *Dart,* the MDNR in *CPC* had assumed control over a portion of the hazardous waste site. By failing to act in a manner consistent with its agreement with Cordova concerning this site, the MDNR allegedly contributed to the discharge of hazardous waste at the site. Plaintiff's complaint, which alleged that the MDNR undertook "hands on" activities concerning the site, was therefor sufficient to withstand MDNR's motion to dismiss the same.

In the present case, the plaintiff alleges that the DEC's conduct regarding the subject site exceeded mere regulation of this site. Stilloe claims that the DEC entered the plaintiff's property, moved certain barrels containing hazardous waste, and that during this activity the DEC, acting in a grossly negligent manner, caused the barrels to be broken open, with consequent spillage of the hazardous waste on the site.[7] Thus, the plaintiff alleges that he was damaged as a direct result of the DEC's physical handling of the hazardous waste at the site. Such conduct on the part of the DEC, if proven, is more akin to the conduct of the MDNR in *CPC* than that of the third-party State defendants in *New Castle County* and *Dart.*

■ After due consideration concerning this issue, this court finds that the DEC was an operator of the subject site at the

---

7. Amended Complaint, ¶¶ 12–13.

time it allegedly broke open the barrels containing the hazardous waste on the Stilloe/Almy property. Therefore, the DEC's motion to dismiss plaintiff's complaint on the theory that it was not a technical "operator" of the site at the time of this spillage must be denied.[8]

**(2)** *The sufficiency of Stilloe's pleadings.*

 The DEC alternatively alleges that the plaintiff's claims against it must be dismissed because they are allegedly not pled with sufficient specificity. The DEC claims that:

> Neither Stilloe nor Almy have alleged facts that amount to gross negligence or intentional misconduct on the State's behalf.... · In an attempt to address the deficiencies of his initial claim, Stilloe merely adds the bald legal conclusion that DEC was "grossly negligent" when moving the barrels. Moreover, Almy simply asserts that DEC was grossly negligent in its response and failed to minimize releases or potential releases, ensure public safety, and properly plan the cleanup.... As both Stilloe and Almy have relied exclusively on bald legal conclusions unsupported with factual allegations, their claims for negligence should be dismissed for failure to state a claim.[9]

However, the DEC has not submitted to this court, nor has this court located, any rule or case authority which stands for the proposition that actions brought under CERCLA must be pled with greater specificity than is required under Fed.R.Civ. Proc. 8(a). Rule 8(a)(2) of these Rules provides that a pleading shall contain "a short and plain statement of the claim showing that the pleader is entitled to the relief" requested. This Rule does not require a claimant to set forth in detail the facts upon which he bases his claim. Instead, the Federal Rules intend that such facts will be ascertained through discovery. *Obradovich v. Fed. Res. Bank of New York,* 569 F.Supp. 785, 788 (S.D.N.Y.1983). As the district court noted in *Mirshak v. Joyce,* 652 F.Supp. 359, 370 (N.D.Ill.1987), Rule 8 only requires "a short and plain statement of a claim for relief that provides fair notice to the opposing party; it does not make any difference whether the pleader accomplishes this by stating 'conclusions', 'ultimate facts', or 'evidence'" (citations omitted). In fact, C. Wright & A. Miller, in 5A *Federal Practice and Procedure,* § 1357 (2d Ed.1990), an authority relied upon by the DEC in its current motion to dismiss, state that in considering a motion under Fed.R.Civ.Proc. 12(b)(6), a court "will accept the pleader's description of what happened to him along with any conclusions that can be reasonably drawn therefrom." *Id.* at p. 319.

In the present case, the plaintiff's amended complaint alleges, *inter alia,* that:

> [D]uring the efforts to move the barrels, the defendant DEC, its agents, servants and employees, were so grossly negligent that one or more of them broke open and released the contents upon the plaintiff's property, also known as the site, causing the alleged hazardous waste to contaminate said site.[10]

Accepting Stilloe's allegations of what happened during the relocation of the barrels to be true, a finder of fact could reasonably conclude that the DEC's conduct in

---

**8.** Of course, the DEC may only be held liable for its actions concerning the site if the leakage which occurred during the cleaning up of the property is found to have been the result of either intentional or grossly negligent conduct on the part of the DEC, since its actions were in response to an emergency situation which existed at the site. 42 U.S.C. § 9607(d) provides, in part, that:

> No State or local government shall be liable under this subchapter for costs or damages as a result of actions taken in response to an emergency created by the release ... of a hazardous substance generated by or from a facility owned by another person. *This paragraph shall not preclude liability for costs or damages as a result of gross negligence or intentional misconduct by the State or local government.* For the purpose of the preceding sentence, reckless, willful or wanton misconduct shall constitute gross negligence. (Emphasis added).

**9.** DEC Sec.Mem., p. 12.

**10.** Amended Complaint, ¶ 13.

moving the barrels was grossly negligent and that this gross negligence caused the barrel's leakage. If this were proven, the DEC would be liable to Stilloe for some or all of the costs or damages he incurred as a result of the DEC's grossly negligent conduct. Since plaintiff's amended complaint states a cause of action against the DEC, its motion to dismiss plaintiff's claims against it for failure to state a claim must be denied.

(3) *The DEC's motion to dismiss Almy's cross-claim.*

■ The DEC has moved to dismiss defendant Almy's cross-claim against the DEC on several grounds. The DEC argues that Almy's cross-claim (i) cannot be asserted against the DEC because the DEC should no longer be a party in this lawsuit, (ii) fails to state a claim upon which relief can be granted and (iii) is being asserted in an improper forum.

The DEC's initial argument in support of its motion cannot be the basis for this court's granting of the same, for the DEC is still a defendant in Stilloe's action.

Turning to the DEC's contention that Almy's cross-claim fails to state a claim against the DEC, the DEC notes:

This Court has held that without establishing the State as a tortfeasor who owed a special duty to the claimant, claims against the State for contribution and indemnity at a hazardous waste site must fail.[11]

The DEC alleges that since Almy cannot establish a "special relationship" between it and the DEC, the DEC's motion to dismiss must be granted.

The district court in *State of New York v. City of Johnstown, N.Y.*, 701 F.Supp. 33 (N.D.N.Y.1988) dismissed the defendant's counterclaim against the State which sought indemnification and/or contribution from the State as a "joint tortfeasor". In doing so, the court noted that "[t]he situation in which the State and defendant are joint tortfeasors is difficult to imagine, and the contribution-indemnification issue seems untenable." *Id.*, 701 F.Supp. at 37. The court dismissed this claim without prejudice, finding that it improperly sought contribution or indemnification from the DEC; however it noted that the defendant might nevertheless have a right to seek recoupment from this party at a later time. *Id.* at 38.

Unlike the facts present in *City of Johnstown*, the DEC in the present action is a *defendant*. Almy, a co-defendant, has asserted a cross-claim which, as amended, clearly alleges that there was a "special relationship" between Almy and the DEC. *See* ¶ 21 in Almy's amended answer. As such, a claim against the DEC for contribution, indemnity or recoupment concerning Almy may lie, and the DEC's motion to dismiss the same must be denied, unless it is barred by the doctrine of sovereign immunity.[12]

■ The DEC contends that:

[C]laimants have chosen an improper forum in which to bring their claims against the State. The State has only waived its sovereign immunity from claims for money damages in the New York Court of Claims.[13]

However, CERCLA, as amended by SARA, provides, in relevant part:

Any person *may seek contribution from any other person who is liable or potentially liable under section [9607(a)] of this title* during or following any civil action under section [9606] or under section 9607(a). Such claims shall be brought in accordance with this section and the Federal Rules of Civil Proce-

---

11. DEC Sec.Mem., p. 13.

12. As with its motion to dismiss Stilloe's amended complaint, the DEC failed to cite any authority for its contention that actions brought under CERCLA must be pled with greater specificity than is required by Rule 8 of the Federal Rules. Thus, Almy's allegations that the DEC acted in a grossly negligent manner, and that the DEC owed a special duty to Almy, are, for purposes of this motion, sufficient to maintain a cross-claim against the DEC under the Act.

13. DEC Sec.Mem., p. 15.

dure, and shall be governed by Federal Law.

42 U.S.C. § 9613(f)(1) (emphasis added).

Moreover, the Supreme Court has clearly stated that "CERCLA renders States liable *in money damages in Federal Court,* and ... Congress has the authority to render them so liable when legislating pursuant to the Commerce Clause." *Union Gas, supra,* 491 U.S. at 23, 109 S.Ct. at 2286 (emphasis added).

Thus, contrary to the assertions of the DEC, Almy is not asserting a common law claim against the State, but rather it is asserting a cross-claim against it, which, while permissive, *see, e.g.,* C. Wright, A. Miller, M. Kane 6 *Federal Practice and Procedure* § 1431 (2d Ed.1990), nevertheless arises under federal law—42 U.S.C. § 9613(f)(1). Thus, the DEC's motion to dismiss Almy's cross-claim must be denied.

## CONCLUSION

New York's Department of Environmental Conservation is a "person" under CERCLA. Its conduct in the present action involved sufficient "hands on" participation so as to make it an operator while it was relocating the barrels and otherwise cleaning up the site. Neither Stilloe nor Almy's pleadings had to be pled with any greater specificity than is required under Rule 8 of the Federal Rules of Civil Procedure. Stilloe's amended complaint, and Almy's amended answer are pled with sufficient specificity so as to withstand the DEC's motion to dismiss the same. Accordingly, the DEC's motion to dismiss Stilloe's complaint and Almy's cross-claim is denied.

IT IS SO ORDERED.