**UNITED STATES of America and State of Maryland**

v.

**Edward AZRAEL, et al.**

**Civ. A. No. WN 89–2898.**

United States District Court, D. Maryland.

April 30, 1991.

---

Robin Lancaster, U.S. Dept. of Justice, Land and Natural Resources Div., Environmental Enforcement Section, Jon M. Lipschultz, U.S. Dept. of Justice, Environmental Defense Section, Washington, D.C., Andrew S. Goldman, pro hoc vice, Asst. Regional Counsel, U.S. Environmental Protection Agency, Philadelphia, Pa., and Richard D. Bennett, U.S. Atty., D.Md., for plaintiff U.S.

J. Joseph Curran, Jr., Catherine M. Flanagan, Michael C. Powell and the Office of the Atty. Gen. of Maryland, for intervening plaintiff State of Md.

Warren K. Rich and Frank E. Couper, Rich, Tucker and Rice, Annapolis, Md., for defendants Edward Azrael, Harriet Azrael and Estate of Cele Landay.

William N. Hedeman, Robert Brager and Paul E. Hagen, Beveridge & Diamond, Washington, D.C., for defendant AT & T and third-party defendant Sweetheart Cup Co., Inc.

Samuel I. Gutter and Teresa A. Howie, Sidley & Austin, pro hoc vice, Washington, D.C., for defendant AT & T.

Mark Grummer and Brian R. Land, Kirkland & Ellis, Washington, D.C., for defendant General Motors Corp.

William Weissman and Cynthia J. Morris, Piper & Marbury, Washington, D.C., and Ronald Byrd, Colleen A. Lamont, Baltimore, Md., for defendant Baltimore Gas & Elec. Co.

William G. Beck, Lathrop, Norquist & Miller, Kansas City, Mo., for defendant Browning–Ferris, Inc.

Frederick Sullivan, McCarthy & Sullivan, Bowie, Md., for defendant J. William Parker & Sons, Inc.

## MEMORANDUM

NICKERSON, District Judge.

Currently pending before the Court are motions to dismiss the counterclaims pur-

suant to Fed.R.Civ.P. 12(b)(1) and (6) filed by the United States of America and the State of Maryland. (Paper Nos. 39, 47). These motions have been fully briefed and supplemental authorities have been filed. After hearing arguments on the motions to dismiss and carefully reviewing the pleadings and supporting papers, the motions to dismiss will be granted for the reasons set forth below.

## I. BACKGROUND

The United States of America (the "Government" or the "United States") brought this action against nine potentially responsible parties to recover cleanup costs incurred by the United States under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9601, *et seq.* and seeking a declaratory judgment for future cleanup costs. The State of Maryland ("Maryland" or "the State") has intervened as plaintiff claiming that it has also incurred cleanup costs, and seeks to recover those costs under CERCLA and state law.

The site at issue is an 8-acre parcel of land located near the intersection of Lombard and Kane Streets in Baltimore, Maryland (the "site"). From at least 1966 to 1983, various wastes, including wastes containing hazardous substances, were deposited at the site. In 1984, after attempting unsuccessfully to secure cleanup of the site by the owners, Maryland requested the Environmental Protection Agency's ("EPA") assistance in securing the cleanup of the site. From 1984 to the present, EPA has conducted response actions at the site pur-

suant to its cleanup authority under CERCLA. On or about August, 1989, Maryland entered into a State Superfund Contract pursuant to Section 104 of CERCLA under which the EPA and the State agreed to jointly fund remediation of the site.[1]

Defendants, Edward Azrael, Harriet Azrael, and Cele Landay ("Azrael and Landay"), American Telephone and Telegraph Company ("AT & T"), General Motors Corporation ("GM"), Baltimore Gas & Electric Company ("BG & E"), Browning–Ferris, Inc. ("BFI") and J. William Parker & Sons, Inc. ("Parker") have filed counterclaims against the United States and Maryland alleging that they are also potentially responsible under CERCLA Section 107(a)(3) as parties who arranged for the disposal of hazardous substances at the site,[2] and that they are responsible for contribution under Section 113 of CERCLA.[3] The counterclaims relate to actions taken by the EPA and its contractors during EPA's removal action at the site and are similar in substance. The counterclaim asserted by defendant Parker, for example, states:

> The United States by contract, agreement or otherwise arranged for the treatment or disposal of hazardous substances owned or possessed by the United States, at a facility owned or operated by another party or entity and containing such hazardous substances. Specifically, the United States arranged for its contractors to spray wastes containing hazardous substances, including toluene, over the Facility.[4]

---

**1.** Section 104(c) of CERCLA provides that the United States may undertake remedial action only after 1) consulting with the affected state or states about the remedial steps to be undertaken; and 2) entering into a Contract in which the state where the site is located agrees to pay ten percent of the remediation costs. 42 U.S.C. § 9604(c).

**2.** The counterclaims asserted against Maryland also allege that the State is liable under Title 7, Md.Env't Code Ann. (1987) ("Title 7"), and defendants Azrael and Landay assert that Maryland is liable as a former "operator" of the site under CERCLA § 107(a)(2), 42 U.S.C. § 9607(a)(2).

**3.** Section 113(f) provides: "[a]ny person may seek contribution from any other person who is

liable or potentially liable under ... Section 107(a) of this title...." 42 U.S.C. § 9613(f)(1).

**4.** *See* Parker's Answer at 9 (Paper 11); Azrael and Landay's Answer at 10 (Paper No. 45); GM's Answer at 11 (Paper No. 13); AT & T's Answer at 8 (Paper No. 14); BG & E's Answer at 9 (Paper No. 10); BFI's Answer at 8 (Paper No. 9).

Defendants' counterclaims against Maryland are virtually identical. *See* Parker's Answer at 12 (Paper No. 34); BFI's Answer at 15 (Paper No. 32); BG & E's Answer at 8–9 (Paper No. 33); AT & T's Answer at 9–10 (Paper No. 35); GM's Answer at 12 (Paper No. 37); Azrael and Landay Answer at 13 (Paper No. 31). Defendants Azrael and Landay, AT & T, GM and BFI also seek indemnification.

**1242**

The counterclaims also allege that the defendants are entitled to indemnification from the plaintiffs in the event they are found liable for response costs at the site.

The United States and Maryland have moved to dismiss the counterclaims, alleging that they are barred by the doctrine of sovereign immunity. This Court agrees with the United States and Maryland, and will dismiss the counterclaims.

## II. LEGAL STANDARDS

A motion made pursuant to Fed.R.Civ.P. 12(b)(6) allows a claim to be dismissed for failure to state a claim upon which relief can be granted. The purpose of a motion under Rule 12(b)(6) is to test the legal sufficiency of the statement of the claim. *Chertkof v. Baltimore*, 497 F.Supp. 1252, 1258 (D.Md.1980). The standard for a motion to dismiss is well known: a complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). For the purposes of ruling on a motion under Rule 12(b)(6), the Court must accept the allegations contained in the complaint as true, and must liberally construe the complaint as a whole. *Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S.Ct. 1843, 1848, 23 L.Ed.2d 404 (1969).

5. CERCLA was amended by the Superfund Amendments and Reauthorization Act of 1986 ("SARA"), Pub.L. No. 99–499, 100 Stat. 1613 (1986). References to CERCLA are to the statute as amended.

6. The National Contingency Plan ("NCP"), 40 C.F.R. Part 300, sets forth procedures and requirements for responding to hazardous waste sites.

7. Section 107(a) imposes liability upon:
(1) the owner and operator of a vessel or a facility,
(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,
(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and

Keeping these standards in mind, the Court will address the arguments presented by the parties.

## III. MERITS

### 1. Statutory and Regulatory Background

Before addressing the merits of the motions, the Court will review the applicable provisions under CERCLA.

■ CERCLA authorizes the EPA to take response actions to minimize and eliminate the dangers posed by threatened or actual releases of hazardous substances through remedial or removal actions. 42 U.S.C. § 9604(a).⁵ The Act further authorizes the United States and states to bring a cost recovery action against parties responsible for the waste to recover "all costs of removal or remedial action incurred by the United States Government ... not inconsistent with the National Contingency Plan." 42 U.S.C. § 9607(a)(4)(A).⁶ This provision operates by imposing strict liability for these costs on four categories of responsible parties, described in Section 107(a)(1)–(4).⁷ An otherwise liable party under Section 107 may avoid liability only by establishing one of the three affirmative defenses enumerated in Section 107(b). 42 U.S.C. § 9607(b) ⁸ "States" and the "United

(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance ...
42 U.S.C. § 9607(a)(1)–(4).

8. Section 107(b) provides the following defenses: "[t]here shall be no liability under [section 107(a) ] for a person otherwise liable who can establish by a preponderance of the evidence that the release or threat of release of a hazardous substance and the damages resulting therefrom were caused solely by—
(1) an act of God;
(2) an act of war;
(3) an act or omission of a third party other than an employee or agent of the defendant, or than one whose act or omission occurs in connection with a contractual relationship, ... with the defendant ...
(4) any combination of the forgoing paragraphs.
42 U.S.C. § 9607(b).

States Government" are explicitly included within the statute's definition of "persons" subject to liability under Section 107. 42 U.S.C. § 9601(21).

Section 120(a)(1) addresses the federal government's potential liability under the statute and provides that "[e]ach department, agency, and instrumentality of the United States ... shall be subject to, and comply with, this chapter in the same manner and to the same extent ..., as any nongovernmental entity, including liability under section 9607 of this title." 42 U.S.C. § 9620(a)(1).

Section 101(20)(D) addresses a state's potential liability under CERCLA. This section excludes from the category of "owners and operators" states which "acquired ownership or control involuntarily through bankruptcy, tax delinquency, abandonment, or other circumstances in which the government involuntarily acquires title by virtue of its function as sovereign." The section continues

> [t]he exclusion provided under this paragraph shall not apply to any State or local government which has caused or contributed to the release or threatened release of a hazardous substance from the facility, and such a State or local government shall be subject to the provisions of this chapter in the same manner and to the same extent, both procedurally and substantively, as any nongovern-

mental entity, including liability under section 9607 of this title.

42 U.S.C. § 9601(20)(D).

Finally, Section 107(d) of CERCLA, 42 U.S.C. § 9607(d), provides an express exemption from liability under Section 107(a) for "persons" engaged in cleanup activities and for states and local governments responding to an emergency created by the release or threatened release of hazardous substances.[9]

Like CERCLA, Maryland's state superfund program authorizes the Maryland Department of the Environment to respond to the release or threat of release of hazardous substances and in the absence of a prompt and proper response action undertaken by the responsible parties. Md.Env't Code Ann. § 7–222(a) (1989). The State program's liability sections duplicate the federal liability scheme in large part. *See* Md.Env't Code Ann. § 7–222(a), (b) (1989).

### 2. *Motions to Dismiss*

■ The question presented by the motions to dismiss is whether Congress intended the Government and states to be potentially liable under Section 107(a) of CERCLA when the EPA and states carry out their statutory responsibilities under CERCLA and state law to clean up hazardous waste sites. After reviewing the language and statutory framework of CERCLA, as well as the policies underlying the statute, the Court finds no such waiver with respect to the contribution counterclaims asserted in this case.[10]

---

**9.** Section 107(d) states in relevant part:

(1) [N]o person shall be liable under this subchapter for costs or damages as a result of actions taken or omitted in the course of rendering care, assistance, or advice in accordance with the National Contingency Plan ("NCP") or at the direction of an onscene coordinator appointed under such plan, with respect to an incident creating a danger to public health or welfare or the environment as a result of any releases of a hazardous substance or the threat thereof. This paragraph shall not preclude liability for costs or damages as the result of negligence on the part of such person.

(2) No State or local government shall be liable under this subchapter for costs or damages as a result of actions taken in

response to an emergency created by the release or threatened release of a hazardous substance generated by or from a facility owned by another person. This paragraph shall not preclude liability for costs or damages as a result of gross negligence or intentional misconduct by the State of local government.

42 U.S.C. § 9607(d)(1), (2).

**10.** Defendants argued at the hearing that they do not seek affirmative recovery but only to reduce the claims asserted by the Government and Maryland (i.e., recoupment). The Court, however, does not interpret the counterclaims asserted by defendants in this case as seeking recoupment. Rather, the language of the claims and defendants' arguments concerning the claims demonstrate that these counterclaims seek affirmative relief based on sections 107(a)

■ It is well established that the United States is immune from suit except as Congress specifically provides, and any waiver of immunity is to be strictly construed in favor of the United States. *United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976); *Radin v. United States*, 699 F.2d 681, 684–85 (4th Cir. 1983). Such waivers must be unequivocally expressed and cannot be implied. *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980).

■ Likewise, the principle of sovereign immunity reflected in the Eleventh Amendment renders states immune from suits filed by private parties in federal court unless the state has waived its immunity. *Hans v. Louisiana*, 134 U.S. 1, 10, 10 S.Ct. 504, 505, 33 L.Ed. 842 (1890). Congress may override this immunity, however, when it acts pursuant to the Fourteenth Amendment, but it must make its intent to do so "unmistakably clear." *Atascardero State Hospital v. Scanlon*, 473 U.S. 234, 242, 105 S.Ct. 3142, 3147, 87 L.Ed.2d 171 (1985).

■ In the present case, defendants rely on *Pennsylvania v. Union Gas Co.*, 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989) in arguing that sections 101(20)(D) and 120(a)(1) create a "general" waiver of the states' and the Government's sovereign immunity. *Union Gas*, however, does not support defendants' argument. In that case, the Court held that sections 101(21) and 101(20)(D) constitute a Congressional waiver of the states' Eleventh Amendment immunity when a state otherwise qualifies as a responsible party under Section 107(a) of CERCLA. *Id.* at 2280. In reaching this conclusion, the Court also noted in dicta that section 120(a)(1) constitutes a waiver of the federal government's immunity from suit in those situations where it would otherwise be a liable party under Section 107(a). *Id.* at 2279. Thus, for example, the United States or a state may be liable under Section 107(a) of CERCLA where a federal agency or the state is an owner or operator of a hazardous waste facility. That the United States or a state can be held liable under 107 when it acts as an owner, operator, transporter or generator, however, does not mean that the Government or the state waives its sovereign immunity when it is acting in a regulatory capacity pursuant to CERCLA's cleanup provisions. *Union Gas*, therefore, does not address the central issue raised in the present motions—whether Section 107(a) extends to Maryland's and the EPA's cleanup activities under CERCLA.

Many courts, including the Fourth Circuit, have recognized that states and the Government enjoy special protections when engaged in regulatory activities under CERCLA. In *New York v. Johnstown*, 701 F.Supp. 33 (N.D.N.Y.1988) defendants asserted a counterclaim against the State of New York arising from the state's attempts to remediate a hazardous waste problem. The Court declined to find that the state was one who "arranged" for the disposal or treatment of hazardous substances under Section 107(a)(3) because the state had no nexus to the site other than its cleanup efforts. *Id.* at 36. *See also, United States v. Dart Industries Inc.*, 847 F.2d 144, 146 (4th Cir.1988) (refusing to find state environmental agency to be "owner or operator" under CERCLA by allowing use of site for disposal of hazardous waste).

More importantly, several courts have held that the language of Section 120 does not waive sovereign immunity when the United States is engaged in cleanup activities at a hazardous waste site. In *United States v. Hardage*, 32 Env't Rep.Cas (BNA) 1059 (W.D.Okl.1989), for example, the Court dismissed counterclaims similar to the ones filed here by defendants. *Hardage* involved an action by the United States to recover cleanup costs at a hazardous waste site pursuant to Section 107.

and 113. For example, the defendants state in their Opposition that "defendants' counterclaims sound in contribution," and that if the Court permits the counterclaims "then [the United States'] liability will be no different than that of defendants found liable for properly recoverable response costs which then can be allocated among all responsible parties, including the United States." Opposition to United States' Motion at 20 and 14 n. 4.

Like this case, the defendants in *Hardage* filed contribution counterclaims against the United States based on EPA's cleanup activities at the site. In dismissing the contribution counterclaims, the *Hardage* court stated that defendants could maintain their counterclaims only if they could show that the counterclaims were authorized by a specific waiver of sovereign immunity. *Id.* at 1061. Finding that such a waiver did not exist, the court added that "the contribution counterclaims, if permitted, would circumvent CERCLA's carefully limited waiver of sovereign immunity." *Id.* The Court concluded that

> [T]here is no suggestion that in CERCLA or its legislative history that the considerations raised by the defendants may take the form of a separate contribution counterclaim which challenges EPA's cleanup activities. The Congress which enacted CERCLA did not contemplate contribution counterclaims against the United States for EPA's cleanup activities, and this Court declines to create such a right when a presumably knowledgeable legislative body has not created one.

*Id.*

Similarly, in *United States v. Western Processing Co., Inc.*, 761 F.Supp. 725 (W.D. Wash.1991), the Court ruled that CERCLA's limited waiver of sovereign immunity does not authorize such claims based on EPA's regulatory and cleanup activities and dismissed defendants' contribution counterclaims. *See also United States v. Heldt*, No. 86–4102, slip op. at 2 (D.S.D. Sept. 20, 1988) (dismissing contribution counterclaims against United States in CERCLA cost recovery action); *B.R. Mackay & Sons, Inc. v. United States*, 633 F.Supp. 1290, 1296 n. 9 (D.Utah 1986) (noting waiver of sovereign immunity in CERCLA is not broad enough to allow claims against the United States for breaches of the NCP in carrying out cleanups). This Court agrees with the reasoning of these decisions.

Moreover, since CERCLA's waiver of a state's immunity and that of the federal government are "virtually identical," *Union Gas*, 109 S.Ct. at 2279, the *Hardage* and *Western Processing* decisions apply with equal authority to the contribution counterclaims asserted against Maryland.[11]

Indeed, reading Sections 120(a)(1) and 101(20)(D) as waivers of sovereign immunity for the EPA and states in carrying out their cleanup duties would contradict the statutory scheme of CERCLA and the policies underlying the statute. Allowing contribution counterclaims in this situation would undermine Congress' intent to ensure that those who benefit financially from a commercial activity should internalize the health and environmental costs of that activity into the costs of doing business. *See O'Neil v. Picillo*, 682 F.Supp. 706, 711 (D.R.I.1988), *aff'd*, 883 F.2d 176 (1st Cir.1989), *cert. denied sub nom. American Cyanamid Co. v. O'Neil*, — U.S. —, 110 S.Ct. 1115, 107 L.Ed.2d 1022 (1990). Further, it would conflict with the primary objective of CERCLA, which is to ensure prompt cleanups. *See* 42 U.S.C. § 9604; *J.V. Peters & Co. v. Administrator, Environmental Protection Agency*, 767 F.2d 263, 264 (6th Cir.1985).

In addition, because liability under CERCLA is strict and subject only to the enumerated defenses, permitting contribution counterclaims against the United States or Maryland would create a new defense whenever the Government or a state initiated a cleanup action. The legislative history of CERCLA makes clear that Congress intended that liability under Section 107 was to be subject to *only* those defenses enumerated in Section 107(b). *See* S.Rep. No. 848 at 31, *reprinted in* 1 Senate Committee on Environmental and Public Works, *A Legislative History of CERCLA*, 97th Cong., 2d Sess. at 338.[12]

---

**11.** In this regard, the Court also finds that Maryland's sovereign immunity bars defendants' counterclaims asserted under Title 7 seeking affirmative judgment against the State.

**12.** The Court also finds persuasive that Congress specifically considered and rejected an amendment proposed by Senator Helms which would have added government misconduct and negligence as a separate defense to CERCLA liability. *See* 126 Cong.Rec. S12,382 (daily ed. Sept. 10,

Finally, including the EPA or Maryland within the scope of section 107 when it performs cleanups of hazardous waste sites is also inconsistent with Congress' intent to address complaints such as those asserted in defendants' counterclaims as defenses to a cost recovery action under Section 107(d). Section 107(d)(1) expressly exempts all "persons," including the United States and states, from liability under CERCLA arising from actions taken in accordance with the NCP. Moreover, Section 107(d)(2) expressly exempts all states and local governments from liability as a result of actions taken in response to an emergency created by a threatened or actual release from a hazardous waste site owned by another. These exemptions demonstrate that Congress did not intend to subject states and the Government to liability under Section 107 for their actions during cleanups.

Section 107(a)(4) further supports this Court's conclusion that Congress wanted to insulate the Government and states from contribution counterclaims arising from their cleanup activities. This section establishes the exclusive method by which allegedly improper cleanup activity of the EPA or a state affects the United States' ability to recover cleanup costs from the liable parties. Under Section 107(a)(4)(A), the EPA is not entitled to reimbursement for expenditures which a defendant shows to be "inconsistent with the national contingency plan...." 42 U.S.C. § 9607(a)(4)(A). It is clear from the statutory language that Congress envisioned that the propriety of cleanup conduct be judged solely by the "not inconsistent" standard of Section 107, as part of the resolution of the EPA's cost recovery action. This reasoning was adopted by both the *Hardage* and *Western Processing* courts.

For the above reasons, the Court finds that the defendants have failed to demonstrate an unequivocal waiver of sovereign immunity with respect to the contribution counterclaims asserted against the United States and Maryland. Concerns about the

propriety of the EPA's response action should be addressed as part of a determination for consistency with the NCP. Accordingly, the Court will dismiss defendants' contribution counterclaims asserted against the United States and Maryland.

1980), *reprinted in* 1 Environmental Law Institute, *Superfund: A Legislative History,* at 180 (1982).