Louis A. STILLOE, Plaintiff,

v.

ALMY BROTHERS, INC., Robert J.
McMahon and Mary A. McMahon, New
York State Department of Environmen-
tal Conservation, Defendants.

No. 90–CV–818.

United States District Court,
N.D. New York.

Jan. 22, 1992.

Butler Allen Clark & Place, Vestal, N.Y., for plaintiff; Earl D. Butler, David S. Berger, of counsel.

Kramer Wales & Wright, Binghamton, N.Y., for defendant Almy Bros.; Robert H. Wedlake, of counsel.

Alexander W. Luckanick, Binghamton, N.Y., for defendants Robert and Mary McMahon.

Robert Abrams, Atty. Gen. of State of N.Y., Albany, N.Y., for State defendants; John J. Privitera, Asst. Atty. Gen., of counsel.

## MEMORANDUM–DECISION AND ORDER

McCURN, Chief Judge.

## INTRODUCTION

The New York State Department of Environmental Conservation ("DEC") seeks reconsideration or, in the alternative, certification pursuant to 28 U.S.C. section 1292(b) of this court's March 19, 1991, order denying DEC's motion to dismiss claims and counter-claims against DEC for its hazardous waste clean-up activity.

This court's March 19th order denied DEC's motion on the grounds that DEC may be liable as an "operator" within the meaning of section 101(20) of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9601(20). The claims allege DEC is liable under section 107(d) for releases of hazardous substances found to be the result of "intentional or grossly negligent conduct," 42 U.S.C. § 9607(d)(2), during a DEC response to environmental hazards at the Stilloe/Almy Brothers property in Binghamton, New York. This court held that the claims, if proved, could establish "operator" liability under CERCLA.

## DISCUSSION

### A. Timeliness of DEC's Motion

■ As a preliminary matter, Stilloe and Almy Brothers argue that the court should deny DEC's motion for reconsideration because it is untimely. In support of this contention, they cite local rule 10(m) which states that "[m]otions for reconsideration ... shall be filed and served not later than ten (10) days after the entry of the judgment, order, or decree concerned." Local Rule 10(m). However, this rule must be read in conjunction with Fed.R.Civ.P. 60(b) which states that "[o]n motion and upon such terms as are just, the court may relieve a party ... from a final judgment, order, or proceeding for the following reasons: ... (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, ..." Fed.R.Civ.P. 60(b) (1991 Rev.Ed.). While district courts have the authority to promulgate local rules, these rules must be consistent with the Federal Rules of Civil Procedure. Moreover, any inconsistencies between a local and a federal rule must be resolved in favor of the federal rule. Therefore, although DEC's motion was not made within the 10 day

period required by local rule 10(m), the court concludes that it was made within a reasonable time pursuant to Fed.R.Civ.P. 60(b). Accordingly, the court holds that DEC's motion for reconsideration is timely.

### B. *Reconsideration*

■ Generally, courts have accepted three grounds as justifying reconsideration of a matter already decided. In this regard, the Second Circuit has permitted reconsideration in those situations which involve "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Doe v. New York City Dep't of Soc. Servs.*, 709 F.2d 782, 789 (2d Cir.), *cert. denied*, 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983). In the present case, DEC seeks reconsideration in light of two recent federal district court decisions. Both of these decisions involved the dismissal of section 107(a) contribution counterclaims similar to the claims and counterclaims asserted against DEC in the present action. *See United States v. Western Processing, Inc.*, 761 F.Supp. 725 (W.D.Wash. 1991) (dismissing a CERCLA counter-claim based on the Environmental Protection Agency's clean-up activities); *United States v. Azrael*, 765 F.Supp. 1239 (D.Md. 1991) (dismissing a CERCLA counter-claim against both the United States and the State of Maryland). Although these decisions are not binding on this court, the court finds their reasoning persuasive. Accordingly, in order to prevent manifest injustice, the court grants DEC's motion for reconsideration in light of these cases as well as its own further research.

■ At issue in this motion for reconsideration is whether DEC can be considered an operator for purposes of CERCLA liability when its only connection to a hazardous waste site results from its remedial clean-up efforts. Relying heavily on the court's statement in *CPC Int'l, Inc. v. Aerojet–General Corp.*, 731 F.Supp. 783, 788 (W.D.Mich.1989), that "where a party as-

sumes control of an activity and then fails to perform, that party should bear the responsibility for any pollution which results," this court held that DEC was an operator of the site at the time it broke open the barrels containing the hazardous waste.[1] *Stilloe v. Almy Brothers, Inc.*, 759 F.Supp. 95, 103–04 (N.D.N.Y.1991). Accordingly, this court denied DEC's motion to dismiss the claims against it. In so doing, however, this court limited DEC's liability to those actions which were found "to have been the result of either intentional or grossly negligent conduct ... since its actions were in response to an emergency situation which existed at the site." *Id.* at 104 n. 8 (citing 42 U.S.C. § 9607(d)).

Having now had the opportunity to review the facts of *Aerojet* in light of the decisions in *Azrael* and *Western Processing*, this court finds that DEC's activities are sufficiently different from those of the Michigan Department of Natural Resources ("MDNR") in *Aerojet* to render that decision inapposite. In *Aerojet*, MDNR entered into a contract with the owner of a hazardous waste site under which MDNR assumed responsibility to operate groundwater purge wells to help reduce pollution and improve waste disposal at the site. *See Stilloe*, 759 F.Supp. at 102–03. In *Aerojet*, this contract provided the nexus between the owner of the property and MDNR by establishing an ongoing relationship. Here there is no such nexus. Nor do Stilloe nor Almy Brothers allege that DEC took control of the site for any reason other than to perform its statutory responsibility to clean up the site. Accordingly, the court now concludes that *Aerojet* does not provide a basis for holding that under the circumstances of this case DEC is an operator within the meaning of CERCLA.

On the contrary, although the court in *Azrael* was concerned with contribution counter-claims under CERCLA, the factual circumstances of that case are very similar to those present here. At issue in *Azrael*

---

1. Although not dispositive of this motion, it should be pointed out that after a trial, the court found that plaintiffs had failed to prove that MDNR was an "operator" for purposes of CERCLA liability.

was the clean-up of a site on which various hazardous substances had been deposited. Both the United States and the State of Maryland became involved in a clean-up effort after their efforts to persuade the owners to clean up the site failed. *Azrael* at 1241. Subsequently, the United States and Maryland brought an action pursuant to CERCLA against the owners to recover costs incurred in cleaning up the site. *Azrael* at 1241. Defendants filed counter-claims against the United States and Maryland alleging that they were responsible under CERCLA section 107(a)(3), 42 U.S.C. § 9607(a)(3), as parties who arranged for disposal of hazardous substances at the site and that as such they were subject to claims for contribution pursuant to section 113 of CERCLA, 42 U.S.C. § 9613. *Azrael* at 1241. Both the United States and Maryland moved to dismiss the counter-claims alleging, as DEC does here, that they were barred by the doctrine of sovereign immunity. *Azrael* at 1242. The court agreed and dismissed the counter-claims.

In framing the issue in *Azrael*, the court stated that the question presented was "whether Congress intended the Government and states to be potentially liable under Section 107(a) of CERCLA when the EPA and states carry out their statutory responsibilities under CERCLA and state law to clean up hazardous waste sites." *Azrael* at 1243. After reviewing the language and statutory framework as well as the policies underlying CERCLA, the court concluded that neither the United States nor Maryland had waived its sovereign immunity with respect to the contribution counter-claims. *Azrael* at 1243.

Defendants in *Azrael* relied on *Pennsylvania v. Union Gas Co.*, 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989), to support their claim that sections 101(20)(D) and 120(a)(1) created a general waiver of the Government's and the state's sovereign immunity. The court disagreed, holding that *Union Gas* did not support such a claim. Although the court conceded that both the United States and a state could be liable under section 107(a) as an owner or operator of a hazardous waste facility, it concluded that such a finding did not indicate

that "the Government or the state waives its sovereign immunity when it is acting in a regulatory capacity pursuant to CERCLA's cleanup provisions." *Azrael* at 1244. Accordingly, the court held that *Union Gas* was not dispositive of the issue of whether section 107(a) extended to the Government's or a state's clean-up activities under CERCLA. *Id.*

Next, the court in *Azrael* looked at the statutory scheme and policies underlying CERCLA to determine whether they would support an argument that sections 120(a)(1) and 101(20)(D) provided a general waiver of sovereign immunity for the Government and the states when they are involved in carrying out their clean-up duties. The court found no general waiver, concluding that to allow contribution counter-claims under such circumstances would undermine Congress' intent "that those who benefit financially from a commercial activity should internalize the health and environmental costs of that activity into the costs of doing business." *Azrael* at 1245 (citing *O'Neil v. Picillo*, 682 F.Supp. 706, 711 (D.R.I.1988), *aff'd*, 883 F.2d 176 (1st Cir. 1989), *cert. denied sub nom. American Cyanamid Co. v. O'Neil*, 493 U.S. 1071, 110 S.Ct. 1115, 107 L.Ed.2d 1022 (1990)). Furthermore, the court concluded that such a finding would conflict with the primary objective of CERCLA which is to ensure prompt clean-ups. *Azrael* at 1245 (citing 42 U.S.C. § 9604; *J.V. Peters & Co. v. Administrator, Environmental Protection Agency*, 767 F.2d 263, 264 (6th Cir. 1985)).

In addition, the court concluded that because CERCLA liability is strict and subject only to defenses enumerated in section 107(b), permitting contribution counter-claims under these circumstances would create a new defense whenever the Government or the state initiated a clean-up action. *Azrael* at 1245. Finally, the court held that to include the Government or a state within the scope of section 107 when its only connection to the site is its performance of its clean-up activities would be inconsistent with Congress' intent to address complaints such as these counter-

claims as defenses to a cost recovery action under section 107(d). *Azrael* at 1246. Section 107(d)(2) expressly exempts all states and local governments from CERCLA liability resulting from actions taken in response to an emergency created by a threatened or actual release from a hazardous waste site owned by another. Thus, the court concluded that these exemptions demonstrated Congress' intent not to subject states to liability under section 107 for their actions during clean-up. *Azrael* at 1246.

For reasons similar to those relied on in *Azrael,* the court in *Western Processing* dismissed contribution counter-claims based on an allegation that the EPA was an operator within the meaning of section 107. Although *Western Processing* involved the EPA, rather than a state environmental agency, its reasoning is applicable to the present case. In *Western Processing* one of the defendants claimed, similarly to Stilloe and Almy Brothers, that "when the EPA closed the site and undertook to stabilize it and conduct a preliminary clean-up, the EPA acted recklessly, willfully and negligently, therefore causing significant contamination of the Western Processing site ..." *Western Processing,* 761 F.Supp. at 727. The court held that "[r]eading CERCLA Section 120(a) as a waiver of sovereign immunity for the EPA in carrying out its duties is unwarranted and directly contrary to the strict construction in the Government's favor on sovereign immunity issues." *Id.* at 728. In this regard, the court accepted the Government's argument that it would be absurd "to construe CERCLA to mean that the United States would be liable whenever EPA's clean-up activities result in a release or threatened release of hazardous substances ... as this would create a new defense to be asserted on a counter-claim whenever the Government initiated a clean-up action." *Id.* at 729. Moreover, the Government contended, and the court agreed, that such a result would be inconsistent with Congress' intent that:

first, those who benefit financially from a commercial activity must internalize the health and environmental costs as costs of doing business; second, liability is strict, subject only to specific, enumerated defenses; and third, Congress specifically considered and rejected an amendment proposed by Senator Helms that would have added government misconduct and negligence as a separate defense to CERCLA liability. (Numerous citations from U.S. memo are omitted.) Section 107(d), concerning liability for negligence, is not an authorization for litigation against the United States, but merely clarifies Congress' intent that the CERCLA remedial scheme not be viewed as occupying the field to the exclusion of tort claims.

*Western Processing,* 761 F.Supp. at 729. Based on these findings, the court dismissed the counter-claims because "[i]t cannot be argued with full conviction that the EPA, in carrying out its duties under the statute, assumes the risk of becoming a liable party as an 'owner/operator' under CERCLA Section 107, and the idea was rejected by Congress." *Id.* Finally, the court stated that the EPA is not analogous to an agency of the Federal Government that generated its own waste and transported it to the site when it is acting in its remedial capacity. *Id.*

Although it dismissed the counter-claims on the basis that the United States had not waived its sovereign immunity, the court went on to discuss whether, even if sovereign immunity had not precluded subject matter jurisdiction, the counter-claims stated a claim upon which relief could be granted. In discussing this issue, the court distinguished the holding in *Aerojet* on the grounds that even though the *Aerojet* court had found "operator" liability on the part of MDNR, it had cited cases with approval to the extent that they held that regulatory or remedial activities did not subject states to liability under CERCLA as owners/operators. *Id.* at 731. Finding that the EPA's activities were exclusively regulatory and remedial, the court held that *Aerojet* was inapposite and that, as a result, defendants had failed to state a claim for liability under CERCLA section 107. *Id.*

Although this court is not bound by the holdings in *Western Processing* and *Azrael*, it finds that the facts underlying these decisions are much more akin to those present here than are the facts in *Aerojet*. In addition, this court finds the reasoning of these courts persuasive especially in light of their thorough discussion of the legislative framework and purposes of CERCLA. This does not mean, however, that a state could never be considered an operator within the meaning of CERCLA. *Union Gas* would foreclose such a finding. What it does mean is that when a state is acting *solely* in its statutory capacity to clean up a hazardous waste site, this activity does not raise its status to that of an operator within the meaning of CERCLA section 107.

In the present case, neither Stilloe nor Almy Brothers allege that DEC had any nexus to the site other than by reason of its remedial clean-up activities. In its amended complaint, Stilloe claims that:

> [t]he actions of [DEC] at the site subjects them to liability as an "operator" of the site, as plaintiff has alleged gross negligence on the part of [DEC] in connection with their activities at the site.

*Stilloe*, 759 F.Supp. at 99 (citing Stilloe's memorandum of law in opposition to DEC's motion to dismiss its complaint, November 8, 1990, at 5).

Even if, as Stilloe alleges, DEC's physical handling of the hazardous waste during its clean-up activities resulted in damage to plaintiff, this activity, without more, does not convert DEC into an operator within the meaning of CERCLA. Stilloe as well as Almy Brothers may very well have claims against DEC, but they are not CERCLA claims. Rather, any claims that they might have against DEC for its handling of the clean-up effort are state law tort claims which section 107(d)(2) specifically does not preclude.

Having concluded that DEC is not an operator within the meaning of CERC-LA under the facts of this case, this court must likewise dismiss Almy Brothers' counter-claims. Section 113 of CERCLA provides that "[a]ny person may seek contribution from any other person who is liable or potentially liable under section [9607(a)] of this title during or following any civil action under section [9606] or under section 9607(a)." 42 U.S.C. § 9613(f)(1). Since DEC is not liable under section 9607(a), Almy Brothers cannot sustain a counter-claim for contribution against DEC based on its clean-up activities at the site. Like Stilloe, Almy Brothers may have a state law tort claim against DEC, but such a claim does not arise under CERCLA.[2]

## CONCLUSION

Having reviewed the holdings of *Azrael* and *Western Processing* as well as the legislative history of CERCLA, the court concludes that under the facts of this case DEC is not an operator within the meaning of section 107 of CERCLA. Therefore, the court grants DEC's motion to dismiss Stilloe's claims against it on the ground that the state has not waived its sovereign immunity and thus this court lacks subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1) to hear this case.

As to the Almy Brothers' contribution counter-claim, the court concludes that because DEC is not subject to liability under section 107(a), Almy Brothers may not seek contribution against DEC. Therefore, the court dismisses Almy Brothers' counter-claim for contribution for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6). Likewise, for the same reason, the court dismisses McMahon's counter-claim against DEC *sua sponte.*

IT IS SO ORDERED.

2. Although defendant McMahon's counter-claim against DEC is not before the court today, the court notes that to the extent that this counter-claim is based on the same theory of recovery as Almy Brothers' counter-claim, it is foreclosed by today's decision. Accordingly, the court dismisses McMahon's counter-claim *sua sponte.*