**UNITED STATES of America, Plaintiff**

**v.**

**AMERICAN COLOR AND CHEMICAL CORPORATION, Pfister Chemical, Inc. and Beazer East, Inc., Defendants.**

No. 4:CV–92–1352.

United States District Court, M.D. Pennsylvania.

March 20, 1995.

Martin R. Siegel, Asst. Counsel, Bureau of Hazardous Sites & Superfund Enforcement, Pennsylvania Dept. of Environmental Resources, Harrisburg, PA, for intervenor-plaintiff Com. of Pa.

Robert L. Collings, Frank M. Thomas, Jr., Kenneth A. Rubin, and Sarah E. Davies, Morgan, Lewis & Bockius, Philadelphia, PA, for defendants American Color and Chemical Corp. and Beazer East, Inc.

Daniel Segal, Claire Rocco, Steven J. Engelmyer, Philadelphia, PA, and Robert N. Gawlas, Jr., Rosenn, Jenkins & Greenwald, Wilkes–Barre, PA, for defendant Pfister Chemical, Inc.

## MEMORANDUM

McCLURE, District Judge.

## BACKGROUND

This is an action by the United States for reimbursement of response costs and for a declaratory judgment[1] on liability pursuant to sections 107 and 113(g)(2) of the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. §§ 9607(a) and 9613(g)(2), in connection with the Drake Chemical Superfund Site (the Drake site or the site) and the American Color and Chemical facility (the AC & C facility or the site) located in Lock Haven, Clinton County, Pennsylvania.[2]

The Environmental Protection Agency (EPA) began cleanup efforts at the site in February, 1982. The Drake site was placed on the National Priorities List (NPL) in 1983 pursuant to section 105 of CERCLA, 42 U.S.C. § 9605. The NPL identifies facilities nationwide at which the release or threatened release of hazardous substances poses a serious threat to the public health and the environment.

In this action, the United States seeks reimbursement for costs it incurred in re-sponding to the release of hazardous substances at the site from owner/operators allegedly liable as responsible parties under section 9607(a), namely American Color and Chemical Corporation (AC & C),[3] Pfister Chemical, Inc. (Pfister) and Beazer East, Inc. (Beazer).[4] The United States also seeks to recover expenses which it has incurred and will incur in the future in cleanup efforts. The Commonwealth of Pennsylvania was granted leave to intervene as a plaintiff, Fed.R.Civ.P. 24,[5] to recover those costs which it is obligated to pay, and has paid, under section 104 of CERCLA, 42 U.S.C. § 9604 and pursuant to three Superfund State Contracts (SSC's) between it and the United States. The Commonwealth is obligated to pay 10% of the cost of the remedial action, and 100% of all future operation and maintenance costs of the remedial action.

EPA's involvement with the Drake site began in 1980. Investigations conducted by, and under the direction of, EPA revealed contaminated surface water, groundwater and soil. EPA conducted a Remedial Investigation/Feasibility Study (Phase I RI/FS) to determine the nature and extent of contamination of a leachate stream, leachate lagoons, and nearby Bald Eagle Creek, and to assess alternatives for remediation. EPA issued the first record of decision (ROD I) for the remediation of the leachate stream in September, 1984. Work under ROD I was completed in 1987. A second RI/FS (Phase II RI/FS) conducted to determine the nature and extent of contamination of buildings, lined lagoons, and other structures at the Drake site was completed in March, 1986. ROD II was issued in May, 1986 for the remediation of those structures. That work is now, also, completed. (Record Document No. 56 at p. 5)

Following completion of the work required under RODs I and II, EPA began work on a third RI/FS (Phase III RI/FS) to determine

---

1. 28 U.S.C. § 2201.

2. Jurisdiction exists pursuant to 28 U.S.C. §§ 1331, 1345 and 1355 and 42 U.S.C. §§ 9607(a) and 9613(b).

3. American Color was formerly known as American Aniline Products, Inc.

4. Beazer was formerly known as Koppers Company, Inc.

5. Record document nos. 25, 27 and 30.

the extent of contamination in soils and sediment at the site. Results from that analysis were interpreted to indicate that contaminants were distributed throughout the site, and that contamination had leached through the layers of soil and sludge to the groundwater table. On the basis of these findings, EPA determined in a third ROD (ROD III) issued September 29, 1988, that remedial action in the form of incineration of the entire 12.5 acre site is necessary, and has received bids for the project. The EPA proposes to incinerate the soil down to groundwater, to depths averaging more than 12 feet. The project is estimated to take 3 to 5 years to complete at a cost of $123 million.

Presently before the court is a motion [6] by the Commonwealth [7] to dismiss the counterclaims filed against it by defendants AC & C,[8] Beazer [9] and Pfister.[10] All three defendants assert identical counterclaims against the Commonwealth.[11]

Defendants counterclaim against the Commonwealth on the basis of removal actions conducted at the site by the EPA pursuant to RODs I and II. Defendants assert that those acts give rise to liability against the Commonwealth because: 1) the Commonwealth is a "person" within the meaning of CERCLA section 101(21), 42 U.S.C. § 9601(21); 2) the Drake site and adjacent lands are a "facility" within the meaning of CERCLA section 101(9), 42 U.S.C. § 9601(9); 3) the AC & C property is a "facility" within the meaning of CERCLA section 101(9), 42 U.S.C. § 9601(9), from which there has been a release or threatened release of hazardous substances; 4) the Commonwealth is contractually obligated to pay the United States 10% of the cost of the remedial action, and 100% of all future operation and maintenance costs of the remedial action incurred in Phases I, II and III of the response action.[12]

The Commonwealth moves to dismiss defendants' counterclaims for failure to state a claim upon which relief can be granted.[13] It contends that none of the claims asserted is viable since all rest on the same grounds as the counterclaims asserted against the United States, which were dismissed by this court in its order and memorandum dated June 2, 1994.[14]

This court dismissed the counterclaims asserted against the United States on the ground that there was no waiver of sovereign immunity for acts carried out in conducting the cleanup of a hazardous site and further found that defendants' recourse for challenging the manner in which the cleanup was carried out is limited to a challenge to the consistency of the costs incurred with the National Contingency Plan.

In making that determination, we rejected arguments that liability could be imposed against the EPA for cleanup activities: 1) because such activities rendered it an owner/operator of the facility under CERCLA section 107(a)(2); 2) because such activities rendered it a transporter/generator of hazardous substances for CERCLA purposes; 3) under a theory of contribution or indemnification under CERCLA section 113, 42 U.S.C. § 9613(f)(1); 4) under a theory of recoupment; and 5) under a theory of conversion asserted by AC & C under CERCLA section 107(a) based on an allegation that the United States "converted property of AC & C to its use" while conducting the cleanup and violated the Constitution in carrying out an "illegal taking or conversion or trespass" making it responsible "for defensive setoff of its claims here." (Record document no. 24, ¶¶ 38–44).

For similar reasons, we find that the counterclaims asserted against the Commonwealth are likewise barred, and that defen-

---

6. Other pending motions will be disposed of by separate order and memorandum.

7. Record document no. 107.

8. Record document no. 82.

9. Record document no. 81.

10. Record document no. 83.

11. Record document no. 30.

12. With some additions and modifications, the same bases were asserted by defendants for the counterclaims asserted against the United States.

13. Record document no. 107.

14. Record document no. 99.

dants' challenge to the costs incurred and the actions undertaken pursuant to the cleanup effort must be made via a challenge to their consistency with the National Contingency Plan. On that basis, the Commonwealth's motion to dismiss the counterclaims asserted against it will be granted.

## DISCUSSION

### Rule 12(b) standards

The Commonwealth seeks dismissal of defendants' counterclaims under Rule 12(b)(6) based on an asserted failure to state a claim upon which relief can be granted. In deciding defendants' motion, we are "required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the non-movant." *Jordan v. Fox, Rothschild, O'Brien & Frankel, Inc.,* 20 F.3d 1250, 1261 (3d Cir.1994). "In determining whether a claim should be dismissed under Rule 12(b)(6)," we look "only to the facts alleged in the complaint and its attachments without reference to other partes of the record." *Id.* Dismissal is not appropriate unless "it clearly appears that no relief can be granted under any set of facts that could be proved consistently with the plaintiff's allegations." *Id.*

### Grant of immunity to state governments

CERCLA expressly grants immunity to state and local governments from liability for actions "taken in response to an emergency created by the release or threatened release of a hazardous substance generated by or from a facility owned by another person." 42 U.S.C. § 9607(d)(2).[15] See generally: *FMC Corp. v. United States,* 29 F.3d 833 (3d Cir. 1994) (discussion of state government liability in *dicta*); *United States v. Dart Industries, Inc.,* 847 F.2d 144 (4th Cir.1988) (no liability on the part of South Carolina Department of Health and Environmental Control for its role in overseeing activities at an abandoned

waste site); and *United States v. New Castle County,* 727 F.Supp. 854 (D.Del.1989)

■ Acts undertaken "to ameliorate a dangerous situation that, but for the prior action of the generators and transporters of the hazardous waste, would not exist," do not subject the governmental entity involved, whether state or federal, to liability for cleanup costs. *FMC Corp., supra,* 29 F.3d at 841. Congress' essential goal of making those responsible for the problems caused by the disposal of toxic wastes bear the costs of and responsibility for remedying the dangerous conditions their conduct created would not be furthered by making the governmental entity who has undertaken cleanup efforts liable for acts done in the course of those efforts. *Id.* See also: *Stilloe v. Almy Brothers, Inc.,* 782 F.Supp. 731, 735–36 (N.D.N.Y.1992). Cf. *B.F. Goodrich Co. v. Murtha,* 958 F.2d 1192, 1199 (2nd Cir.1992).

■ Imposing liability for negligence in carrying out cleanup operations would run counter to the statutory scheme of CERCLA and the policies it is intended to foster. "Allowing contribution counterclaims ... would undermine Congress' intent to ensure that those who benefit financially from a commercial activity should internalize the health and environmental costs of that activity into the costs of doing business." *United States v. Azrael,* 765 F.Supp. 1239, 1245 (D.Md.1991).

Although section 9607(d) allows for the imposition of liability against state or local governments for costs or damages incurred as a result of gross negligence or intentional misconduct by those entities, 42 U.S.C. § 9607(d)(2), there are no allegations to that effect in this case. See: record document nos. 81, 82 and 83, defendants' counterclaims.

Therefore, we reject defendants' contentions that a basis for liability exists against the Commonwealth for cleanup activities conducted or supervised by EPA or the Com-

---

**15.** Section 9607(d)(2) provides:

No State or local government shall be liable under this subchapter for costs or damages as a result of actions taken in response to an emergency created by the release or threatened release of a hazardous substance generated by or from a facility owned by another person. This paragraph shall not preclude liability for

costs or damages as a result of gross negligence or intentional misconduct by the State or local government. For the purpose of the preceding sentence, reckless, willful, or wanton misconduct shall constitute gross negligence.

42 U.S.C. § 9607(d)(2).

monwealth at the site and grant the Commonwealth's motion to dismiss for reasons substantially similar to those supporting our dismissal of the counterclaims asserted against the EPA. *Azrael, supra,* 765 F.Supp. at 1245, citing *Pennsylvania v. Union Gas Co.,* 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989).

**Inconsistency with the National Contingency Plan**

Again, defendants are not without redress for their contention that, to the extent it was involved in cleanup activities, the Commonwealth failed to carry out the cleanup operation properly and that its alleged errors increased response costs which defendants are now being asked to pay. Response costs are recoverable by the United States and by the Commonwealth only to the extent that the costs incurred are consistent with the NCP. CERCLA section 107(a)(4)(A) bars the EPA and, here, the Commonwealth, from recovering expenditures which are "inconsistent with the national contingency plan...." 42 U.S.C. § 9607(a)(4)(A).

Defendants can, therefore, in defense of the cost-recovery claims filed against them, assert inconsistency with the NCP of increased costs allegedly caused by errors of the Commonwealth or EPA. That procedure, not the assertion of counterclaims through attempts to characterize the Commonwealth as an owner/operator of the cleanup site, is the proper method for challenging cleanup costs incurred. *United States v. Western Processing Company,* 761 F.Supp. 725, 729 (W.D.Wash.1991). "Concerns about the propriety of the .. response action should be addressed as part of a determination for consistency with the NCP." *Azrael, supra,* 765 F.Supp. at 1246. See also: *United States v. Atlas Minerals and Chemicals, Inc.,* 797 F.Supp. 411, 419–20 (E.D.Pa.1992) ("The sole way in which CERCLA defendants can challenge the propriety of the ... response and remediation actions is by arguing, in the damages phase of a CERCLA case, that those actions were inconsistent with the NCP."); *In re Paoli Railroad Yard PCB Litigation,* 790 F.Supp. 94, 97 (E.D.Pa. 1992) ("It is clear from the statutory language that Congress envisioned that the propriety of cleanup conduct be judged solely by the 'not inconsistent' standard as part of EPA's cost recovery action."); and *Azrael, supra,* 765 F.Supp. at 1246.

**Summary**

For all of the above reasons, defendants' counterclaims against the Commonwealth will be dismissed.

*ORDER*

For the reasons stated in the accompanying memorandum, **IT IS ORDERED THAT:**

1. The Commonwealth of Pennsylvania's motion to dismiss [1] the counterclaims filed against it by defendants American Color and Chemical Corporation (American Color),[2] Pfister Chemical, Inc. (Pfister) [3] and Beazer East, Inc. (Beazer) [4] is granted.

2. All counterclaims asserted by defendants in their answers to the intervenor complaint filed by the Commonwealth are dismissed.

3. The remaining outstanding motions will be addressed in a separate memorandum and order.