OPINION
 

 RODRIGUEZ, District Judge.
 

 This matter is before the court on plaintiffintervenor State of New Jersey Department of Environmental Protection’s (“NJDEP”) motion for summary judgment dismissing the counterclaim of defendant, Owens-Illinois, Inc. (“Owens-Illinois”). The court, having considered the submissions of the parties, and for the reasons set forth below, grants plamtiff-intervenor’s motion and dismisses the counterclaim.
 

 BACKGROUND
 

 The Lipari landfill occupies approximately six acres in Mantua Township. Toxic wastes, in both solid and liquid forms, were dumped there beginning in 1958 and ending in 1971 when the site was closed by the State of New Jersey. The site is currently listed on the National Priorities List (“NPL”) promulgated by the Environmental Protection Agency (“EPA”) pursuant to section 105 of CERCLA, 42 U.S.C. § 9605.
 

 Pursuant to section 107 of CERCLA, 42 U.S.C. § 9607, the EPA initiated suit on September 10, 1985 to recover the costs of implementing these clean-up efforts. In January of 1986, NJDEP intervened pursuant to Section 104(c) of CERCLA, 42 U.S.C. § 9604. An amended complaint was filed by NJDEP on December 28,1990.
 

 In its answer to NJDEP’s amended complaint, Owens-Illinois included a counterclaim against NJDEP for recoupment of
 

 any of the response costs incurred by the State in the past or in the future ... pursuant to CERCLA, the New Jersey Comparative Negligence Act, N.J.S.A. 2A:15-5.1
 
 et seq.,
 
 the Uniform Contribution Among Joint Tortfeasor Act, N.J.S.A. 2A:53A-3
 
 et seq.,
 
 federal common law, or
 
 *1159
 
 by way of restitution or other equitable relief, for any judgment entered against Owens-Illinois____
 

 Owens-Illinois Answer to NJDEP First Am. Compl. at 18. NJDEP, in its answer to the counterclaim, denied any liability to Owens-Illinois. NJDEP also stated that the counterclaim failed to state a claim upon which relief can be granted, and, in the alternative, was barred under the New Jersey Tort Claims Act, N.J.S.A. 59:1-1
 
 et seq.
 
 NJDEP Answer to Owens-Illinois Counterel. at 2. Subsequently, in February of 1996, NJDEP filed a motion for summary judgment, claiming that Owens-Illinois’ counterclaim was not only baseless and unsupported by both law and fact, but barred by the Eleventh Amendment, New Jersey law, and concepts of sovereign immunity. NJDEP Br. in Supp. of Mot. for Summ. J. at 1-2. It is this motion which is presently before the court.
 

 DISCUSSION
 

 A.
 
 Standard of Review for Summary Judgment
 

 The entry of summary judgment is appropriate only when “the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.” Fed. R.Civ.P. 56(c). An issue is “genuine” if it is supported by evidence such that a reasonable jury could return a verdict in the non-moving party’s favor.
 
 Anderson v. Liberty Lobby, Inc.,
 
 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A fact is “material” if, under the governing substantive law, a dispute about it might affect the outcome of the suit.
 
 Id.
 
 In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the non-moving party.
 
 Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
 
 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).
 

 The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact.
 
 Celotex Corp. v. Catrett,
 
 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Once the moving party has met this burden, the non-moving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.
 
 Id.
 
 at 324, 106 S.Ct. at 2553. The non-moving party may not rest upon mere allegations or denials of its pleadings.
 
 Id.
 
 “[T]he plain language of Rule 56(e) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party’s case, and on which that party will bear the burden of proof at trial.”
 
 Id.
 
 at 322, 106 S.Ct. at 2552.
 

 However, in deciding the motion, the court does not “weigh the evidence and determine the truth of the matter, but [instead] determine[s] whether there is a genuine issue for trial.”
 
 Anderson,
 
 477 U.S. at 248, 106 S.Ct. at 2510. If the non-movant has provided evidence exceeding the “mere scintilla” threshold in demonstrating a genuine issue of material fact, the court cannot weigh the evidence and credit the movant’s interpretation of the evidence. This is so even if the movant’s evidence far outweighs the nonmovant’s evidence. Credibility determinations are the province of the fact-finder.
 
 Big Apple BMW, Inc. v. BMW of North America,
 
 974 F.2d 1358, 1363 (3d Cir.1992),
 
 cert. denied,
 
 507 U.S. 912, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993).
 

 B.
 
 Viability of Counterclaim
 

 1.
 
 Contribution Under CERCLA
 

 In its counterclaim against NJDEP, Owens-Illinois appears to state a claim for contribution under CERCLA.
 
 [1]
 
 Such claims are
 
 *1160
 
 governed by CERCLA § 113(f), 42 U.S.C. § 9613(f), which states that “[a]ny person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title [CERCLA § 107(a)]....”
 

 CERCLA § 107(a) provides liability for any (1) current owner or operator of a facility, (2) owner or operator of a facility at the time hazardous substances were disposed there, (3) person who arranged for disposal or arranged for the transport of hazardous substances for disposal, or (4) any person who accepts any hazardous substances for transport or disposal, 42 U.S.C.A. § 9607(a) (West 1995), but only if (1) they are also found to have disposed of the hazardous substances at a “facility”
 
 [2]
 
 , (2) there is a “release”
 
 [3]
 
 or threatened release of the hazardous substances from the facility, and (3) the release causes the incurrence of “response” costs.
 
 [4]
 

 Id.; United States v. Alcan Aluminum Corp. (Alcan-Butler Tunnel),
 
 964 F.2d 252, 258-59 (3d Cir.1992).
 

 This court has found, in another order signed today, that the Lipari Landfill is a facility, from which there was a release or threatened release of hazardous substances that caused the incurrence of response costs within the meaning of CERCLA. Therefore, for NJDEP to be a liable or potentially liable party under CERCLA § 107(a), and thus allow Owens-Illinois’ claim for contribution from NJDEP under CERCLA § 113(f), Owens-Illinois must show that NJDEP was either a (1) current owner or operator of Lipari, (2) owner or operator of Lipari at the time hazardous substances were disposed there, (3) person who arranged for disposal or arranged for the transport of hazardous substances for disposal at Lipari, or (4) a person who accepted any hazardous substances for transport or disposal at Lipari.
 

 It is clear that Owens-Illinois has not carried this burden. Indeed, they do not even appear to have alleged NJDEP’s liability under CERCLA § 107(a). Nonetheless, NJDEP was not the owner or operator of Lipari during its duration as an active landfill. The only actions Owens-Illinois attributes to NJDEP within the relevant time period with respect to the Lipari Landfill were to approve its use as a landfill, inspect its operations periodically, and ultimately shut it down in 1971. Such actions are not sufficient to create owner or operator liability under CERCLA § 107(a).
 
 Accord United States v. New Castle County,
 
 727 F.Supp. 854, 864-70 (D.Del.1989).
 

 Similarly, NJDEP cannot be the current owner or operator of Lipari simply by means of the removal action. Courts faced with a similar claim based on similar facts have come to the same conclusion.
 
 See, e.g., United States v. American Color & Chemical Corp.,
 
 885 F.Supp. 111 (M.D.Pa.1995) (holding that Commonwealth of Pennsylvania could not be considered an owner/operator of Superfund site based upon principles of sovereign immunity explicitly enumerated in CERCLA);
 
 see also
 
 42 U.S.C. § 9607(d)(2) (affording state and local governments immunity for costs or damages resulting from response actions absent gross negligence or intentional misconduct). Still, this point seems moot, as the facts indicate that NJDEP was involved in the remediation of Lipari in only an advisory and cost sharing role — NJDEP has not actively participated in the removal and clean-up of the Lipari site.
 
 See
 
 Decl. of Ferdinand C. Cataneo, attached as Ex. 2 to NJDEP Reply Br., at 5 ¶ 13. Instead, the United States Environmental Protection Agency, in cooperation with the Army Corps of Engineers, has performed all the governmental remedial actions with respect to Lipari.
 

 
 *1161
 
 Nonetheless, it is clear that neither EPA nor NJDEP could be held liable under such a theory. As the court in
 
 United States v. Atlas Minerals & Chemicals, Inc.,
 
 797 F.Supp. 411, 419 (E.D.Pa.1992), states:
 

 The defendants’ counterclaims, in a nutshell, allege that, when the EPA took over the landfill in order to initiate a cleanup pursuant to [CERCLA § 104], the EPA became an “owner or operator” within the meaning of CERCLA, and is therefore subject to liability for any releases of hazardous substances which occurred during its tenure----
 

 Although this court is both aware, and appreciative, of the need for zealous advocacy, the court believes that it is time for the environmental defense bar to stop filing CERCLA counterclaims against the EPA for actions undertaken by the EPA in conjunction with cleanup activities. Such counterclaims are clearly barred.
 

 Because there are no allegations that NJDEP ever disposed of hazardous substances at the Lipari Landfill, NJDEP’s possible liability as a generator, transporter, or disposer can easily be rejected as well. As a result, the failure of Owens-Illinois to carry its burden on establishing NJDEP as a liable or potentially liable party under CERCLA § 107(a) forecloses the possibility of success of any contribution claim under CERCLA § 113(f). Accordingly, NJDEP’s summary judgment on this prong of the counterclaim will be granted.
 

 2.
 
 Contribution, Restitution and Other Equitable Relief Under State Tort Law
 

 In its answer to NJDEP’s amended complaint, Owens-Illinois also appears to state counterclaims for contribution, restitution, or other equitable relief against NJDEP.
 
 See
 
 Owens-Illinois Answer to NJDEP First Am. Compl. at 18. However, Owens-Illinois seems to have abandoned these claims in their opposition to NJDEP’s motion for summary judgment. They do not address nor refute NJDEP’s contentions that the New Jersey Tort Claims Act, N.J.S.A. 59:1-1
 
 et seq.,
 
 and principles of sovereign immunity require that these counterclaims be dismissed. Therefore, we will consider NJDEP’s arguments unopposed, and since no genuine issue of fact has been created, NJDEP’s motion for summary judgment on these counterclaims will be granted as well.
 

 3.
 
 Counterclaim for Recoupment
 

 Owens-Illinois also states a counterclaim for recoupment against NJDEP.
 
 See
 
 Owens-Illinois Answer to NJDEP First Am. Compl. at 18. NJDEP claims that such a counterclaim is barred by the Eleventh Amendment and the New Jersey Tort Claims Act. Owens-Illinois responds that NJDEP’s participation in the current action constituted a waiver of their sovereign and Eleventh Amendment immunities, thereby allowing the recoupment claim.
 

 Admittedly, the law on the issue of recoupment under CERCLA appears to be in a state of flux. Owens-Illinois cites cases such as
 
 Livera v. First National State Bank,
 
 879 F.2d 1186 (3d Cir.),
 
 cert. denied sub nom., Livera v. Small Business Administration,
 
 493 U.S. 937, 110 S.Ct. 332, 107 L.Ed.2d 322 (1989),
 
 United States v. Shaner,
 
 1992 WL 154652 (E.D.Pa. June 15, 1992), and
 
 United States ex rel. Department of Fish & Game v. Montrose,
 
 788 F.Supp. 1485 (C.D.Cal.1992), to support its contention that recoupment claims are viable in the context of CERCLA NJDEP, on the other hand, cites cases such as
 
 United States v. Iron Mountain Mines, Inc.,
 
 881 F.Supp. 1432 (E.D.Cal.1995), and
 
 United States v. Keystone Sanitation Co.,
 
 867 F.Supp. 275 (M.D.Pa.1994), to support its view that recoupment claims are not permissible under CERCLA We find that those eases which do not allow recoupment within the context of CERCLA are the more well reasoned decisions, and thus grant NJDEP’s motion for summary judgment.
 

 In
 
 Keystone Sanitation,
 
 the EPA brought a cost recovery action under CERCLA against various defendants as potentially responsible parties (“PRPs”). Defendants counterclaimed with, among other things, claims against the Commonwealth of Pennsylvania for recoupment.
 
 Keystone Sanitation,
 
 867 F.Supp. at 279. In addressing the recoupment issue, the court noted that re
 
 *1162
 
 coupment was a “common law, equitable doctrine that permits a defendant to assert a defensive claim aimed at reducing the amount of damages recoverable by a plaintiff.”
 
 Id.
 
 at 282. Although the court noted that other courts allowed recoupment counterclaims in CERCLA actions, it was not persuaded that such claims were proper.
 
 Id.
 

 Indeed, the court finds recoupment a rather tortured concept in the context of a CERCLA § 107 cost recovery action____ [Recoupment claims are counterclaims for damages caused by the EPA when it has acted in its sovereign capacity in cleaning up the site, and to allow the claim to go forward requires a waiver of immunity____ [A]lthough the court agrees with the case law citing the general rule that the government’s institution of a lawsuit is a sufficient waiver of sovereign immunity in some circumstances, ... there is no authoritative precedent stating that it is a sufficient waiver in the context of CERCLA’s very unique and restrictive statutory scheme.
 

 Indeed, it seems inconsistent with the statutory scheme and the case law pertinent to other CERCLA pleading limitations to say that the waiver requirement for a recoupment claim is satisfied because the government instituted a CERCLA action. If that is the rationale, should other equitable counterclaims be permitted as well? What happens, then, to the settled law pertinent to defensive pleading, which recognizes only a few limited defenses to liability and costs, and does not permit counterclaims that attempt to subvert these limitations.
 

 Id.
 
 at 282-83. After analyzing the different rationales used by courts which allowed recoupment claims in CERCLA actions, the
 
 Keystone Sanitation
 
 court noted that relief sought through recoupment was no different from that sought under the “inconsistency with the NCP” defense. Therefore, the court deferred on the issue in the hope that the Third Circuit would address it.
 

 Although the Third Circuit has not addressed the issue at this time, the Eastern District of California did in
 
 Iron Mountain Mines,
 
 where the EPA and State of California brought. a cost recovery action under CERCLA against various defendants. Once again, the defendants raised recoupment claims against the State. Although the
 
 Iron Mountain Mines
 
 court recognized that recoupment claims had been allowed by other courts, including that very court in a prior order in the same case, the court cited
 
 Keystone Sanitation
 
 with approval in determining that the concept of recoupment was not appropriate under CERCLA.
 
 Iron Mountain Mines,
 
 881 F.Supp. at 1453-54.
 

 If the theory of recoupment is adopted in the context of a CERCLA action, the rather extraordinary exposure that results to governmental entities is evident____ A state entity would be exposed through recoupment to suit in federal court for state law claims that would normally be barred by the Eleventh Amendment and state sovereign immunity law. The same inconsistency with standards set out in CERCLA could well arise.
 
 See
 
 42 U.S.C. § 9607(d)(2) (state government liable in an emergency only for gross negligence). Although CERCLA waives sovereign immunity for actions against governmental agencies who are responsible for environmental injury, and subjects them as well to claims for contribution, there is nothing in CERCLA that addresses a recoupment remedy or suggests that by bringing a CERCLA action a government agency exposes itself to claims under other state or federal statutory and common law schemes as to which it would otherwise be immune from suit. Can this far reaching result have been intended by Congress in the enactment of CERCLA?
 

 Id.
 
 at 1454 (footnote omitted). The court then considered the development of recoupment jurisprudence, concluded that extension of that doctrine to CERCLA was inappropriate, and dismissed the recoupment claims.
 

 We are persuaded that the rationale behind
 
 Keystone Sanitation
 
 and
 
 Iron Mountain Mines
 
 soundly supports our decision today. As both decisions make clear, Congress enacted CERCLA to be its own statutory framework. As both cases point out, allowing recoupment claims in effect allows remnants of the common law to infect what
 
 *1163
 
 Congress meant to establish with CERCLA — the otherwise abolishment of common law doctrine with respect to clean-up of hazardous waste sites. Additionally, since CERCLA provides Owens-Illinois with clear statutory relief similar to that which they seek, it is reasonable to conclude, especially in light of recoupment’s common law origins and history, that the doctrine not be applicable in the CERCLA context.
 

 Additionally, we are guided by Judge Fisher’s decision in
 
 United States v. Wheaton Industries,
 
 1991 WL 208877 (D.N.J. Oct. 8, 1991), for the proposition that no waiver of sovereign or Eleventh Amendment immunities has occurred. In
 
 Wheaton,
 
 the EPA brought a cost recovery action under CERCLA, claiming that Wheaton was a responsible party.
 
 Wheaton,
 
 1991 WL 208877 at *1. In its answer, Wheaton filed a third party complaint against NJDEP.
 
 Id.
 
 Subsequently, NJDEP intervened in the action.
 
 Id.
 
 With respect to whether NJDEP had waived its Eleventh Amendment immunity, Judge Fisher noted that although a state, in availing itself of the federal court system to secure affirmative relief, effectively waives Eleventh Amendment immunity for counterclaims which arise from the same events underlying the State’s claims, the Eleventh Amendment immunity had not been voluntarily waived because NJDEP’s intervention as a plaintiff in the case was defensive.
 
 Id.
 
 at *3. If NJDEP had not intervened, Wheaton could invoke the doctrines of res judicata and collateral estoppel to preclude relitigation of issues decided against EPA
 
 Id.
 

 The cases cited by Owens-Illinois in its opposition do not sway our conclusion. For instance,
 
 Livera,
 
 although involving a claim for recoupment, does not do so within the context of CERCLA. Therefore, Owens-Illinois’ claims that Third Circuit precedent permits CERCLA defendants to maintain recoupment counterclaims is erroneous.
 
 Keystone Sanitation
 
 clearly states that the Third Circuit has not decided this issue. Other cases cited by Owens-Illinois which allow recoupment in CERCLA actions based upon waiver of immunity are distinguishable. It is clear in
 
 Montrose, Shaner,
 
 and
 
 United States v. Mottolo,
 
 605 F.Supp. 898 (D.N.H.1985), that the governments acted voluntarily as plaintiffs. Here it is equally clear, in light of
 
 Wheaton
 
 and NJDEP’s position as plaintiff-intervenor, that NJDEP did not act voluntarily. Moreover, none of these eases view CERCLA, as
 
 Keystone Sanitation
 
 and
 
 Iron Mountain Mines
 
 correctly do, as having its own, independent statutory framework which limits counterclaims to those authorized by CERCLA.
 
 See also Pennsylvania v. Union Gas Go.,
 
 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989) (finding that Congress, through the Commerce Clause, abrogated state immunity from liability under CERCLA by including states in the definitions of “persons” and “owners or operators”).
 

 Recoupment doctrine, with its tenuous basis in the common law, cannot serve as a substitute for a clearly expressed congressional intent to subject [NJDEP] to state or non-CERCLA federal law counterclaims, as to which they would otherwise be immune, in the context of a CERCLA action, when CERCLA itself expressly limits its waiver of sovereign immunity to CERCLA counterclaims.
 

 Iron Mountain Mines,
 
 881 F.Supp. at 1456 (footnote omitted). Accordingly, we will grant NJDEP’s summary judgment on Owens-Illinois’ counterclaim for recoupment.
 

 Regardless of the waiver and immunity issues, Owens-Illinois recoupment counterclaim would be unsuccessful. In its opposition brief, Owens-Illinois states several bases for recoupment against NJDEP: (1) NJDEP’s knowledgeable failure to take action to prevent background sources of contamination from polluting the off site areas; (2) NJDEP’s remedial actions themselves causing a release of hazardous substances;
 
 [5]
 
 (3) Rohm & Haas, Inc.’s “legacy” of dumping hazardous materials at the Lipari site and NJDEP’s subsequent failure to stop it; and (4) the existence of fraud perpetrated by government contractors. We will discuss the
 
 *1164
 
 validity of each of these stated bases for recoupment in turn.
 

 First, Owens-Illinois claims that NJDEP failed to prevent background areas of pollution from contaminating the off-site areas, even though they had knowledge of the occurrence. However, this claim is unavailing. The New Jersey Tort Claims Act, N.J.S.A. 59:1-1
 
 et seq.,
 
 supports this conclusion. As NJDEP points out, it is undisputed that there are over 6,000 known contaminated hazardous waste sites in the State of New Jersey.
 
 [6]
 
 The cleanup and containment of any one of these sites is a daunting task, so the mind boggles when considering that a lone State agency such as NJDEP, even when working in conjunction with the EPA, has responsibility for all of them. Clearly, all the resources at NJDEP’s disposal could not remediate all of these sites at the same time. The New Jersey legislature recognized this predicament in enacting the Tort Claims Act:
 

 The Legislature recognizes the inherently unfair an inequitable results which occur in the strict application of the traditional doctrine of sovereign immunity. On the other hand the Legislature recognizes that while a private entrepreneur may readily be held liable for negligence within the chosen ambit of his activity, the area within which the government has the power to act for the public good is almost without limit and therefore government should not have the duty to do everything that might be done. Consequently, it is hereby declared to be the public policy of this State that public entities shall only be liable for their negligence within the limitations of this act and in accordance with the fair and uniform principles established herein. All of the provisions of this act should be construed with a view to carry out the above legislative declaration.
 

 N.J.S.A. § 59:1-2 (West 1992). Under the Tort Claims Act, immunity is the rule; liability is the exception.
 
 See
 
 N.J.S.A. 59:2-1 (stating that “[ejxcept as otherwise provided ..., a public entity is not liable for an injury, whether such injury arises out of an act or omission of a public entity”).
 

 Specifically, the Tort Claims Act provides NJDEP with immunity for these alleged actions. Under N.J.S.A 59:2-3, NJDEP has immunity arising from the exercise of judgment or discretion vested in them, which includes the provision of adequate government services. Additionally, N.J.S.A. 59:2-4 provides NJDEP with immunity for failing to enforce any law. Similarly, N.J.S.A 59:2-6 provides NJDEP with immunity for failure to inspect or negligent inspection of property-
 

 Clearly, Owens-Illinois’ allegations are that NJDEP failed to provide the resources necessary to prevent further contamination of the Lipari site. As such, they necessarily claim that NJDEP failed to use proper discretion in enforcing the state and federal environmental laws. In light of the Tort Claims Act, this stated basis for recoupment is clearly insufficient. Under a similar rationale, Owens-Illinois’ second and third bases for recoupment must also be eliminated. Although
 
 Montrose
 
 held that similar provisions in the California Tort Claims Act did not afford immunity, that case is distinguishable in that the California Tort Claims Act consists of provisions for liability which the New Jersey Tort Claims Act does not contain.
 
 See Montrose,
 
 788 F.Supp. at 1494.
 

 At this point, only the fourth stated basis for recoupment, the alleged fraud perpetrated by government contractors, remains. Although the Tort Claims Act does not appear to provide immunity here, such is irrelevant. The fraud alleged by the government contractors was in the sampling done in the off-site areas. As such, the costs are not the subject of any prior consent decree and remain unreeovered. However, the costs of the additional testing done by these contractors was fully borne by the EPA — NJDEP incurred no costs in association with this testing.
 
 See
 
 Deck of Ferdinand C. Cataneo, attached as Ex. 2 to NJDEP Reply to Owens-Illinois Opp. to Mot. for Summ. J., at 4-5 ¶ 12. Therefore, NJDEP is not seeking re
 
 *1165
 
 eovery from Owens-Illinois for any of the costs associated with this fraud. Therefore, this fourth basis for Owens-Illinois’ claim for recoupment must fail as well.
 

 As a result, NJDEP’s motion for summary judgment will be granted, and Owens-Illinois’ counterclaims are dismissed.
 

 An appropriate order will be entered.
 

 [1]
 

 . Owens-Illinois does not explicitly state that they are seeking contribution under CERCLA. In their answer to NJDEP’s amended complaint, Owens-Illinois states a claim for "recoupment pursuant to CERCLA,” and demands judgment against the State for “recoupment and contribution of all sums that it may be compelled to pay____” Both NJDEP and this court interpret these statements as an attempt to state a counterclaim under CERCLA § 113(f), 42 U.S.C. § 9613(f).
 

 [2]
 

 . A facility is defined under CERCLA as:
 

 (A) any building, structure, installation, equipment, pipe or pipeline (including any pipe into a sewer or publicly owned treatment works), well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock, or aircraft, or (B) any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located; but does not include any consume product in consumer use or any vessel.
 

 42 U.S.C.A. § 9601(9) (West 1995).
 

 [3]
 

 .
 
 See id.
 
 § 9601(22).
 

 [4]
 

 .
 
 See id.
 
 § 9601(25).
 

 [5]
 

 . Owens-Illinois claims that because remedy discovery has been stayed in this matter until a later stage of the proceedings, NJDEP’s motion for summary judgment is premature. However, as previously discussed, such event has no effect on the ultimate disposition of the motion.
 

 [6]
 

 . NJDEP Reply to Owens-Illinois' Opp’n to Mot. for Suram. J. at 2 (citing New Jersey Department of Environmental Protection Site Remediation program,
 
 Known Contaminated Sites in New Jersey
 
 (1994)).